# UNITED STATES *v.* INTERNATIONAL MINERALS & CHEMICAL CORP.

No. 557.   Argued April 26, 1971—Decided June 1, 1971

DOUGLAS, J., delivered the opinion of the Court, in which BURGER, C. J., and BLACK, WHITE, MARSHALL, and BLACKMUN, JJ., joined. STEWART, J., filed a dissenting opinion, in which HARLAN and BRENNAN, JJ., joined, *post,* p. 565.

*John F. Dienelt* argued the cause for the United States *pro hac vice.* With him on the briefs were *Solicitor General Griswold, Assistant Attorney General Wilson,* and *Beatrice Rosenberg.*

*Harold E. Spencer* argued the cause for appellee. With him on the brief was *Charles J. McCarthy.*

Mr. Justice Douglas delivered the opinion of the Court.

The information charged that appellee shipped sulfuric acid and hydrofluosilicic acid in interstate commerce and "did knowingly fail to show on the shipping papers the required classification of said property, to wit, Corrosive Liquid, in violation of 49 C. F. R. 173.427."

Title 18 U. S. C. § 834 (a) gives the Interstate Commerce Commission power to "formulate regulations for the safe transportation" of "corrosive liquids" and 18 U. S. C. § 834 (f) states that whoever "knowingly violates any such regulation" shall be fined or imprisoned.

Pursuant to the power granted by § 834 (a) the regulatory agency[1] promulgated the regulation already cited which reads in part:

> "Each shipper offering for transportation any hazardous material subject to the regulations in this chapter, shall describe that article on the shipping paper by the shipping name prescribed in § 172.5 of this chapter and by the classification prescribed in § 172.4 of this chapter, and may add a further description not inconsistent therewith. Abbreviations must not be used." 49 CFR § 173.427.

The District Court, relying primarily on *Boyce Motor Lines, Inc.* v. *United States,* 342 U. S. 337, ruled that the information did not charge a "knowing violation" of the regulation and accordingly dismissed the information.

The United States filed a notice of appeal to the Court of Appeals, 18 U. S. C. § 3731, and in reliance on that section later moved to certify the case to this Court which

---

[1] The regulatory authority originally granted the Interstate Commerce Commission was transferred to the Department of Transportation by 80 Stat. 939, 49 U. S. C. § 1655 (e) (1964 ed., Supp. V).

the Court of Appeals did; and we noted probable jurisdiction, 400 U. S. 990.

Here as in *United States* v. *Freed*, 401 U. S. 601, which dealt with the possession of hand grenades, strict or absolute liability is not imposed; knowledge of the shipment of the dangerous materials is required. The sole and narrow question is whether "knowledge" of the regulation is also required. It is in that narrow zone that the issue of *"mens rea"* is raised; and appellee bears down hard on the provision in 18 U. S. C. § 834 (f) that whoever "knowingly violates any such regulation" shall be fined, etc.

*Boyce Motor Lines, Inc.* v. *United States, supra,* on which the District Court relied, is not dispositive of the issue. It involved a regulation governing transporting explosives, inflammable liquids, and the like and required drivers to "avoid, so far as practicable, and, where feasible, by prearrangement of routes, driving into or through congested thoroughfares, places where crowds are assembled, street car tracks, tunnels, viaducts, and dangerous crossings." The statute punished whoever "knowingly" violated the regulation. *Id.,* at 339. The issue of *"mens rea"* was not raised below, the sole question turning on whether the standard of guilt was unconstitutionally vague. *Id.,* at 340. In holding the statute was not void for vagueness we said:

> "The statute punishes only those who knowingly violate the Regulation. This requirement of the presence of culpable intent as a necessary element of the offense does much to destroy any force in the argument that application of the Regulation would be so unfair that it must be held invalid. That is evident from a consideration of the effect of the requirement in this case. To sustain a conviction, the Government not only must prove that petitioner could have taken another route which was both

commercially practicable and appreciably safer (in its avoidance of crowded thoroughfares, etc.) than the one it did follow. It must also be shown that petitioner knew that there was such a practicable, safer route and yet deliberately took the more dangerous route through the tunnel, or that petitioner willfully neglected to exercise its duty under the Regulation to inquire into the availability of such an alternative route.

"In an effort to give point to its argument, petitioner asserts that there was no practicable route its trucks might have followed which did not pass through places they were required to avoid. If it is true that in the congestion surrounding the lower Hudson there was no practicable way of crossing the River which would have avoided such points of danger to a substantially greater extent than the route taken, then petitioner has not violated the Regulation. But that is plainly a matter for proof at the trial. We are not so conversant with all the routes in that area that we may, with no facts in the record before us, assume the allegations of the indictment to be false. We will not thus distort the judicial notice concept to strike down a regulation adopted only after much consultation with those affected and penalizing only those who knowingly violate its prohibition." *Id.,* at 342–343.

The *"mens rea"* that emerged in the foregoing discussion was not knowledge of the regulation but knowledge of the safer routes and those that were less safe within the meaning of the regulation. Mr. Justice Jackson, writing in dissent for himself, MR. JUSTICE BLACK, and Mr. Justice Frankfurter, correctly said:

"I do not suppose the Court intends to suggest that if petitioner knew nothing of the existence of

such a regulation its ignorance would constitute a defense." 342 U. S., at 345.

There is no issue in the present case of the propriety of the delegation of the power to establish regulations and of the validity of the regulation at issue. We therefore see no reason why the word "regulations" should not be construed as a shorthand designation for specific acts or omissions which violate the Act. The Act, so viewed, does not signal an exception to the rule that ignorance of the law is no excuse and is wholly consistent with the legislative history.

The failure to change the language in § 834 in 1960 should not lead to a contrary conclusion. The Senate approved an amendment deleting "knowingly" and substituting therefor the language "being aware that the Interstate Commerce Commission has formulated regulations for the safe transportation of explosives and other dangerous articles." [2] But the House refused to agree. As the House Committee stated, its version would "retain the present law by providing that a person must 'knowingly' violate the regulations." [3]

The House Committee noted there was a "judicial pronouncement as to the standards of conduct that make a violation a 'knowing' violation." [4] In *St. Johnsbury Trucking Co.* v. *United States,* 220 F. 2d 393, 397, Chief Judge Magruder had concluded that knowledge of the regulations was necessary. But whether the House Committee was referring to *Boyce Motor Lines* or the opinion of Chief Judge Magruder is not clear since both views of the section were before Congress.[5] It is clear that

---

[2] See H. R. Rep. No. 1975, 86th Cong., 2d Sess., 10–11.

[3] *Id.,* at 2.

[4] *Ibid.*

[5] See the HEW Staff Memorandum, *id.,* at 16–19.

strict liability was not intended. The Senate Committee felt it would be too stringent and thus rejected the position of the Interstate Commerce Commission.[6] But despite protestations of avoiding strict liability the Senate version was very likely to result in strict liability because knowledge of the facts would have been unnecessary and anyone involved in the business of shipping dangerous materials would very likely know of the regulations involved. Thus in rejecting the Senate version the House was rejecting strict liability.[7] But it is too much to conclude that in rejecting strict liability the House was also carving out an exception to the general rule that ignorance of the law is no excuse.

The principle that ignorance of the law is no defense applies whether the law be a statute or a duly promulgated and published regulation. In the context of these proposed 1960 amendments we decline to attribute to Congress the inaccurate view that that Act requires proof of knowledge of the law, as well as the facts, and that it intended to endorse that interpretation by retaining the word "knowingly." We conclude that the meager legislative history of the 1960 amendments makes unwarranted the conclusion that Congress abandoned the general rule and required knowledge of both the facts and the pertinent law before a criminal conviction could be sustained under this Act.

So far as possession, say, of sulfuric acid is concerned the requirement of *"mens rea"* has been made a requirement of the Act as evidenced by the use of the word "knowingly." A person thinking in good faith that he was shipping distilled water when in fact he was shipping

---

[6] S. Rep. No. 901, 86th Cong., 1st Sess., 3.

[7] The Senate language might "well create an almost absolute liability for violation." H. R. Rep. No. 1975, *supra*, at 2.

some dangerous acid would not be covered. As stated in *Morissette* v. *United States,* 342 U. S. 246, 250:

"The contention that an injury can amount to a crime only when inflicted by intention is no provincial or transient notion. It is as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil."

There is leeway for the exercise of congressional discretion in applying the reach of *"mens rea."* *United States* v. *Balint,* 258 U. S. 250. *United States* v. *Murdock,* 290 U. S. 389, closely confined the word "willfully" in the income tax law to include a purpose to bring about the forbidden result:

"He whose conduct is defined as criminal is one who *'willfully'* fails to pay the tax, to make a return, to keep the required records, or to supply the needed information. Congress did not intend that a person, by reason of a bona fide misunderstanding as to his liability for the tax, as to his duty to make a return, or as to the adequacy of the records he maintained, should become a criminal by his mere failure to measure up to the prescribed standard of conduct. And the requirement that the omission in these instances, must be willful, to be criminal, is persuasive that the same element is essential to the offense of failing to supply information." *Id.,* at 396.

In *Balint* the Court was dealing with drugs, in *Freed* with hand grenades, in this case with sulfuric and other dangerous acids. Pencils, dental floss, paper clips may also be regulated. But they may be the type of products which might raise substantial due process questions if Congress did not require, as in *Murdock, "mens*

*rea"* as to each ingredient of the offense. But where, as here and as in *Balint* and *Freed,* dangerous or deleterious devices or products or obnoxious waste materials are involved, the probability of regulation is so great that anyone who is aware that he is in possession of them or dealing with them must be presumed to be aware of the regulation.

*Reversed.*

Mr. Justice Stewart, with whom Mr. Justice Harlan and Mr. Justice Brennan join, dissenting.

This case stirs large questions—questions that go to the moral foundations of the criminal law. Whether postulated as a problem of *"mens rea,"* of "willfulness," of "criminal responsibility," or of *"scienter,"* the infliction of criminal punishment upon the unaware has long troubled the fair administration of justice. See, *e. g., Morissette* v. *United States,* 342 U. S. 246; *Lambert* v. *California,* 355 U. S. 225; *Scales* v. *United States,* 367 U. S. 203. Cf. *Durham* v. *United States,* 214 F. 2d 862. But there is no occasion here for involvement with this root problem of criminal jurisprudence, for it is evident to me that Congress made punishable only knowing violations of the regulation in question. That is what the law quite clearly says, what the federal courts have held, and what the legislative history confirms.

The statutory language is hardly complex. Section 834 (a) of Title 18, U. S. C., gives the regulatory agency power to "formulate regulations for the safe transportation" of, among other things, "corrosive liquids." Section 834 (f) provides that "[w]hoever knowingly violates any such regulation shall be fined not more than $1,000 or imprisoned not more than one year, or both." In dismissing the information in this case because it did not charge the appellee shipper with knowing violation of the applicable labeling regulation, District Judge Porter

did no more than give effect to the ordinary meaning of the English language.

It is true, as the Court today points out, that the issue now before us was not directly involved in *Boyce Motor Lines, Inc.* v. *United States,* 342 U. S. 337, which dealt with a claim that the statute is unconstitutionally vague. But in holding the statute valid, the Court bottomed its reasoning upon the proposition that "the presence of culpable intent [is] a necessary element of the offense." *Id.,* at 342. Other federal courts, faced with the precise issue here presented, have held that the statute means exactly what it says—that the words "knowingly violates any such regulation" mean no more and no less than "knowingly violates any such regulation." *St. Johnsbury Trucking Co.* v. *United States,* 220 F. 2d 393 (CA1 1955); *United States* v. *Chicago Express,* 235 F. 2d 785 (CA7 1956). Chief Judge Magruder filed a concurring opinion in the *St. Johnsbury* case, and he put the matter thus:

> "If it be thought that the indicated requirement of proof will seriously hamper effective enforcement of the Interstate Commerce Commission regulations, the answer is that Congress is at liberty to fix that up by striking out . . . the prescribed element of *mens rea*—'knowingly'—as applied to violation of regulations of the sort here involved. . . .

> "If a statute provides that it shall be an offense 'knowingly' to sell adulterated milk, the offense is complete if the defendant sells what he knows to be adulterated milk, even though he does not know of the existence of the criminal statute, on the time-honored principle of the criminal law that ignorance of the law is no excuse. But where a statute provides, as does 18 U. S. C. § 835, that whoever knowingly violates a regulation of the Interstate Commerce Commission shall be guilty of an offense, it

would seem that a person could not knowingly violate a regulation unless he knows of the terms of the regulation and knows that what he is doing is contrary to the regulation. Here again the definition of the offense is within the control and discretion of the legislature." *Id.*, at 398.

In 1960 these judicial decisions were brought to the attention of the appropriate committees of Congress by the Interstate Commerce Commission, which asked Congress to overcome their impact by amending the law, either by simply deleting the word "knowingly" or, alternatively, by substituting therefor the words "being aware that the Interstate Commerce Commission has formulated regulations for the safe transportation of explosives and other dangerous articles." [1] The Senate passed a bill adopting the second alternative, based on a committee report that stated:

"Prosecution for violations of the Commission's transportation of explosives regulations has been extremely difficult because of the requirement in section 835 of the act that violators must have knowledge that they violated the Commission's regulations. While the committee believes that every reasonable precaution should be taken to provide for punishing those violating a statute whose purpose is to promote safety, the creation of an absolute liability is deemed too stringent." [2]

The House, however, refused to accept the Senate's language and resubstituted the word "knowingly," its committee report stating:

"The present Transportation and Explosives Act requires that a violation 'knowingly' be committed before penalty may be inflicted for such violation.

---

[1] See H. R. Rep. No. 1975, 86th Cong., 2d Sess., 10–11.
[2] S. Rep. No. 901, 86th Cong., 1st Sess., 2–3.

Under the present law there is judicial pronouncement as to the standards of conduct that make a violation a 'knowing' violation. The instant bill would change substantially the quantum of proof necessary to prove a violation since it provides that 'any person who being aware that the Interstate Commerce Commission has formulated regulations for the safe transportation of explosives and other dangerous articles' is guilty if there is a noncompliance with the regulations. Such language may well create an almost absolute liability for violation. . . . Since the penalties prescribed for violation of the Explosives Act are substantial and since proof required to sustain a charge of violation of such regulations under the bill would require little more than proof that the violation occurred, it is the considered opinion of the committee that such a substantial departure in present law is not warranted. It is the purpose of this amendment to retain the present law by providing that a person must 'knowingly' violate the regulations." [3]

Three days later the Senate agreed to the resubstitution of the word "knowingly" by passing the House version of the bill.

The Court today thus grants to the Executive Branch what Congress explicitly refused to grant in 1960. It effectively deletes the word "knowingly" from the law. I cannot join the Court in this exercise, requiring as it does such a total disregard of plain statutory language, established judicial precedent, and explicit legislative history.

A final word is in order. Today's decision will have little practical impact upon the prosecution of interstate motor carriers or institutional shippers. For interstate

---

[3] H. R. Rep. No. 1975, 86th Cong., 2d Sess., 2.

motor carriers are members of a regulated industry, and their officers, agents, and employees are required by law to be conversant with the regulations in question.[4]  As a practical matter, therefore, they are under a species of absolute liability for violation of the regulations despite the "knowingly" requirement.  This, no doubt, is as Congress intended it to be.  Cf. *United States* v. *Dotterweich*, 320 U. S. 277; *United States* v. *Balint*, 258 U. S. 250.  Likewise, prosecution of regular shippers for violations of the regulations could hardly be impeded by the "knowingly" requirement, for triers of fact would have no difficulty whatever in inferring knowledge on the part of those whose business it is to know, despite their protestations to the contrary.  The only real impact of this decision will be upon the casual shipper, who might be any man, woman, or child in the Nation.  A person who had never heard of the regulation might make a single shipment of an article covered by it in the course of a lifetime.  It would be wholly natural for him to assume that he could deliver the article to the common carrier and depend upon the carrier to see that it was properly labeled and that the shipping papers were in order.  Yet today's decision holds that a person who does just that is guilty of a criminal offense punishable by a year in prison.  This seems to me a perversion of the purpose of criminal law.

I respectfully dissent from the opinion and judgment of the Court.

---

[4] 49 CFR § 397.02.