The UNITED STATES of America

v.

ALLIED CHEMICAL CORPORATION, Defendant.

No. Cr. 76–24.

United States District Court,
W. D. New York.

May 6, 1977.

Richard J. Arcara, U. S. Atty., W. D. N. Y., Buffalo, N. Y., for plaintiff; Edward J. Wagner, Asst. U. S. Atty., Buffalo, N. Y., of counsel.

Robert B. Conklin, Hodgson, Russ, Andrews, Woods & Goodyear, Buffalo, N. Y., for defendant.

## MEMORANDUM and ORDER

ELFVIN, District Judge.

On February 12, 1976 an Information was filed against defendant Allied Chemical Corporation ("Allied") alleging:

"That on or about August 11, 1975, in the Western District of New York, ALLIED CHEMICAL CORPORATION, defendant, a corporation, a manufacturer of chemicals, did knowingly offer for shipment to a common carrier, in interstate commerce, and ship from its Industrial Chemical Division Plant at Buffalo, New York, a shipment of nitric acid, a corrosive, without said nitric acid being packaged and stored in a container in compliance with the requirements for packaging of nitric acid as set out in 49 CFR 173.-268(c); all in violation of 49 CFR 173.1(b),

49 CFR 173.22(a) and Title 18, United States Code, Section 834(f)."[1]

Allied moved before the Honorable Edmund F. Maxwell, United States Magistrate for the Western District of New York,[2] to dismiss the Information on the grounds that 18 U.S.C. § 834(f) did not apply. Allied raised two arguments in support of its motion. Firstly, it contended that section 834(f) applies only to violations of the Interstate Commerce Commission ("ICC") Regulations and not Department of Transportation ("DOT") Regulations. Alternatively, Allied urged that the exclusive penalty for violation of DOT Regulations is 49 U.S.C. § 1809.[3] The Government argued that 49 U.S.C. § 1655(e)(4) effected, when enacted, a transfer from ICC to DOT of functions, including enforcement, of existing regulations under 18 U.S.C. §§ 831–835 over hazardous materials' transportation. It also countered that 18 U.S.C. § 834(f) is the sole provision applicable inasmuch as regulations have not been promulgated under 49 U.S.C. §§ 1804 and 1809, or, alternatively, that the regulations allegedly violated are enforceable under either 18 U.S.C. § 834(f) or 49 U.S.C. § 1809 and the election to prosecute under 18 U.S.C. § 834(f) is within the Government's discretion.

Magistrate Maxwell found that 18 U.S.C. § 834(f) and 49 U.S.C. § 1809 were irreconcilably in conflict and, inasmuch as 49 U.S.C. § 1809 covers the whole subject matter embraced by section 834, section 1809 was clearly intended by Congress to substitute for section 834(f). Therefore, he found that the Hazardous Materials Transportation Act, P.L. 93–633 Title I, §§ 101–115, repealed 18 U.S.C. § 834(f) by implication and dismissed the Information by his Order dated December 7, 1976 and entered December 8, 1976.

Thereupon, The United States of America timely moved this case before me for a *de novo* rehearing of the Decision and Order, and the defendant (perhaps out of an excess of caution) renewed its motion to dismiss on the legal grounds advanced before the Magistrate. The matter is now pending before me.

Having considered the Decision and Order of Magistrate Maxwell and the memoranda submitted to him and additional memoranda by both parties, submitted to me upon my request, I conclude that 18 U.S.C. § 834(f) is not inconsistent with 49 U.S.C. § 1809(a)(1) and was not repealed by implication, and that defendant's motion to dismiss the Information should be denied.

1. Section 834(f) reads as follows:

"(f) Whoever knowingly violates any such regulation shall be fined not more than $1,000 or imprisoned not more than one year, or both; and if the death or bodily injury of any person results from such violation, shall be fined not more than $10,000 or imprisoned not more than ten years, or both."

2. By a writing filed May 26, 1976, Allied consented to be prosecuted before the Magistrate on the charge in the subject Information, as authorized by Section 3401 of Title 18 of the United States Code.

3. § 1809. Penalties

Civil

"(a)(1) Any person * * * who is determined by the Secretary, after notice and an opportunity for a hearing, to have knowingly committed an act which is a violation of a provision of this chapter or of a regulation issued under this chapter, shall be liable to the United States for a civil penalty. Whoever knowingly commits an act which is a violation of any regulation, applicable to any person who transports or causes to be transported or shipped hazardous materials, shall be subject to a civil penalty of not more than $10,000 for each violation, and if any such violation is a continuing one, each day of violation constitutes a separate offense. * * * The amount of any such penalty shall be assessed by the Secretary by written notice. In determining the amount of such penalty, the Secretary shall take into account the nature, circumstances, extent, and gravity of the violation committed and, with respect to the person found to have committed such violation, the degree of culpability, any history of prior offenses, ability to pay, effect on ability to continue to do business, and such other matters as justice may require.

\* \* \* \* \* \*

Criminal

"(b) A person is guilty of an offense if he willfully violates a provision of this chapter or a regulation issued under the chapter. Upon conviction, such person shall be subject, for each offense, to a fine of not more than $25,000, imprisonment for a term not to exceed 5 years, or both."

My determination that 49 U.S.C. § 1809(a)(1) does not apply to the exclusion of the earlier law, 18 U.S.C. § 834(f), is based upon the history of the sections involved.

■ Prior to 1960 provisions similar to section 834 appeared in 18 U.S.C. § 835 which was based on the Acts of March 4, 1909, c. 321, §§ 233, 235 and 236, 35 Stat. 1135, 1136; March 4, 1921, c. 172, 41 Stat. 1445; October 9, 1940, c. 777, § 6, 54 Stat. 1028 (§§ 383, 385 and 386 of former Title 18). In order to constitute a violation of former section 835, a specific wrongful intent to violate a regulation covering the shipment of explosives or other dangerous articles must be proven. *United States v. Chicago Express,* 235 F.2d 785 (7th Cir. 1956); *St. Johnsbury Trucking Company v. United States,* 220 F.2d 393 (1st Cir. 1955). In 1960 Congress considered changes in the section which would eliminate any requirement that there must be a knowing violation of the regulations. After deliberation, no changes were made and the section was continued in its previous form but was re-numbered as section 834. See, *United States v. International Minerals and Chemical Corp.,* 402 U.S. 558, 91 S.Ct. 1697, 29 L.Ed.2d 178 (1971).

In 1966, the functions of the ICC relating to explosives and other dangerous materials, which functions were delegated to it under 18 U.S.C. §§ 831–835, were transferred to DOT. 49 U.S.C. § 1655(e)(4).

The Hazardous Materials Transportation Control Act of 1970, P.L. 91–458, Title III, §§ 302–303 (formerly 49 U.S.C. §§ 1761 and 1762), continued in effect the provisions of 18 U.S.C. §§ 831–835 and made additional provisions authorizing the Secretary of Transportation to evaluate the hazards involved in the transportation of hazardous materials, to recommend steps for the control of movement of such materials and to report to the President and Congress concerning these matters.

In 1971, in the case of *United States v. International Minerals and Chemical Corp.,*

*supra,* it was held that it was not required for a conviction under section 834 to show that the defendant knew of the regulation where dangerous products are involved. "* * * [W]here * * * dangerous or deleterious devices or products or obnoxious materials are involved, the probability of regulation is so great that anyone who is aware that he is in possession of them or dealing with them must be presumed to be aware of the regulation." *Id.,* at 565, 91 S.Ct. at 1702.

The Transportation Safety Act of 1974, P.L. 93–633, section 113(g) of which expressly repealed the Hazardous Materials Transportation Control Act of 1970, became law January 3, 1975. Title I of that Act is entitled the "Hazardous Materials Transportation Act" and is codified as 49 U.S.C. §§ 1801–1812. Section 1809 sets forth penalties and contains civil and criminal subsections. Section 1809(a) provides for the civil penalty and section 1809(b) for the criminal penalty.[4]

The effect, if any, of these penalties upon those authorized under section 834 is the pith of this present question, for the resolution of which a review of the legislative history of P.L. 93–633 is necessary.

■ As indicated in the Report of the House's Interstate and Foreign Commerce Committee, No. 93–1083, which accompanied the House Bill H.R. 15223 when it was introduced, there were three basic purposes for enacting P.L. 93–633.

"The basic purpose of Section 5 of H.R. 15223 is threefold. First, the present authority to regulate the shippers and carriers of hazardous materials is expanded to cover manufacturers of the containers and packages in which such substances are transported. Second, civil penalties and injunctive relief are added to the criminal penalties to which violators of hazardous materials regulations are subject under present law. Third, certain specific statutory delegations of authority to entities (the Federal Aviation Administration, the Federal Railroad Administra-

4. See footnote 3, *supra.*

tion, and the Federal Highway Administration) within DOT are eliminated and such authority is consolidated in the Secretary of Transportation."[5]

There was no other provision for criminal penalties in the House proposal. The House Report did contain the following reference to 18 U.S.C. §§ 831–835:

"Except for the changes set forth above, the Committee's main intent was to retain intact the authority over Hazardous Materials Transportation that presently exists under statutes such as the Federal Aviation Act, the Department of Transportation Act, and the provisions of 18 U.S.C. 831–835. The Committee notes that there is presently pending before the Judiciary Committee a separate bill, H.R. 14629 (introduced by Mr. Kuykendall on May 7, 1974) which would bring the relevant provisions of Title 18 into conformity with H.R. 15223.[6]

"Section 5(a) amends the Hazardous Materials Transportation Control Act of 1970 by adding a new section 304. The new Section 304(a) provides definitions of several terms used in Section 304. The definitions generally parallel those in 18 U.S.C. 831."[7] (Underscoring added.)

The Senate proposal, S. 4057, provided for the imposition of civil penalties in the maximum amount of $10,000 on any person who violated a provision of the Act or any regulation issued under it. Further, it would have made it a crime, punishable by a fine of $25,000 or imprisonment for five years, to knowingly violate a provision of the Act or a regulation issued under it.

As set out in Senate Conference Report No. 93–1347, dated December 13, 1974, the conference substitute which was enacted into law was made with the following considerations:

*"PENALTIES*
*"House bill*

"The House bill provided for the imposition of civil penalties (1) on carriers and shippers in a maximum amount of $2,000 for each violation of an applicable regulation, except that if the violation by the carrier or shipper is a continuing one each day of violation shall be considered a separate offense, and (2) in a maximum amount of $10,000 for each violation of a regulation applicable to the manufacture, fabrication, marking, maintenance, reconditioning, repair, testing, and distribution of packages or containers that may be used for the transportation of hazardous materials. Such civil penalties were to be recovered in an action brought by the Attorney General in Federal district court, with authority in the Secretary to compromise the amount.

*"Senate amendment*

"The Senate amendment provided for the imposition of civil penalties on any person (except an employee who acts without knowledge) who violates a provision of the Act or a regulation issued under it in a maximum amount of $10,000 for each violation, except that each day of a continuing violation was a separate violation. The violation and civil penalty were to be determined and assessed by the Secretary, in accordance with listed criteria. A person against whom such a penalty was assessed may obtain review in the appropriate court of appeals of the United States; the determinations of the Secretary were to be set aside if found to be unsupported by substantial evidence. The Secretary has authority to compromise the amount. If any person failed to pay an assessment of a civil penalty, the Secretary (or at his request the Attorney General) recovered such amount after the penalty order had become final and unap-

---

5. U.S.Code Cong. and Admin.News, 93rd Cong., 2d Sess. (1974), pp. 7679–80.

6. Very significantly, H.R. 14629 was never reported out of Committee and was never enacted as law.

7. U.S.Code Cong. and Admin.News, 93rd Cong., 2d Sess. (1974), p. 7680.

pealable or after the court of appeals had entered final judgment in favor of the Secretary. The Senate amendment further made it a crime, punishable by a $25,000 fine or 5 years imprisonment, to knowingly violate a provision of the Act or a regulation thereunder.

*"Conference substitute*

"The conference substitute—

"(1) Adopts the House provision as to the maximum penalty amounts, with a distinction between the civil liability of those who transport and ship hazardous materials and those who manufacture etc. packages and containers for use in such transportation and shipment, except that the maximum penalty per carrier or shipper violation is also to be $10,000;

"(2) Adopts the Senate amendment as to the criteria or factors to be taken into account by the Secretary in determining the amount of civil penalty.

"(3) Adopts the House provision as to enforcement with an affirmative obligation on the Government to recover such penalty in an appropriate district court of the United States;

"(4) Provides that a civil penalty may be imposed only upon proof that the defendant knowingly committed the act which constitutes the violation (it is not necessary to show that he knew the act constituted a violation) and only after the Secretary affords such person notice and an opportunity for an administrative hearing; and

"(5) Adopts the Senate provision as to criminal penalties except that the term 'knowingly' is changed to 'willfully.'" [8]

■ Reviewing this legislative history the Magistrate found that it was the intent of Congress to subject violators of regulations *only* to civil penalties for the knowing commission of an act which happens to be a violation of a regulation and to subject them to criminal penalties for *only* the willful violations of such regulations. The

Magistrate also found that the Hazardous Materials Transportation Act covered the whole subject matter embraced by section 834. He states that: "It might even be reasonably construed that the Act * * * supplants all of Chapter 39 [18 U.S.C. §§ 831–835]" The Magistrate's ultimate finding was:

"Considering the concern expressed by Mr. Justice Stewart as to the infliction of criminal punishment on the unaware (*U.S. v. International Minerals & Chemical Corp.*, 402 U.S. 558, 565, [91 S.Ct. 1697, 29 L.Ed.2d 178]), considering the legislative evolution of the present Act, and considering the conference report as to the intent of Congress in providing only civil punishment for the class which concerned Mr. Justice Stewart, it is only reasonable to assume that, as a minimum, the penalty provisions of the Act * * were intended to supplant the penalty provisions of Section 834. In awareness of the elements which constituted a violation under the old law as interpreted by Mr. Justice Douglas, Congress changed the character of the penalty for such violation from criminal to civil and required a new characterization—wilfulness—as a necessary element of a criminal violation.

"I thus believe that it was the intent of Congress in enacting Title 49 USC Section 1809 to provide only a civil penalty for a 'knowing' violation of the regulations and that the criminal information charging such a violation should be dismissed. The defendant's motion is granted." [9]

My reading of the Hazardous Materials Transportation Act and its legislative history causes me to find differently. The argument for repeal by implication is based upon the assumptions that Congress considered the contentions in Mr. Justice Stewart's dissent in *United States v. International Minerals and Chemical Corp., supra,* and that the adoption by the Joint Committee Conference of the Senate's term "willful" in the stead of the House's term "knowing" was pursuant to those conten-

---

**8.** Id., pp. 7685–6.

**9.** Decision herein by Hon. Edmund F. Maxwell, United States Magistrate, dated and entered November 16, 1976, pp. 10–11.

tions. Nothing in the legislative history demonstrates that Congress was reacting to the *International Minerals* decision in any way. Congress was not seeking to lessen the likelihood that "knowing" violators of regulations would be subject to criminal penalties. The purpose was to "* * * put some teeth in this new legislation by making civil and criminal penalties for violations of regulations quite severe." 120 Cong.Rec.H 12351 (daily ed. Dec. 19, 1974, remarks of Rep. Jarman). Similar intent was expressed in the Senate at the time P.L. 93–633 was passed:

"This legislation is designed to improve the compliance record in this area. As mentioned previously, with a consolidation of the enforcement responsibilities in the Secretary, we will have a more efficient enforcement program. Hopefully, the Office of Management and Budget will provide sufficient resources to enable inspection of 10 percent of the shipments; we are currently inspecting less than 1 per cent. Additionally, the sanctions for violating a standard are inconsistent and inadequate among the model agencies. Some of the agencies do not have civil forfeiture authority—only criminal penalties are available. Thus the agency must either let the violation go by, since the criminal sanction is so severe and difficult to prove, or expend great agency resources to obtain a criminal conviction. Similarly, some agencies do not have criminal sanction authority." 120 Cong. Rec.S 20143 (daily ed. Dec. 18, 1974, remarks of Senator Hartke.)

The increase of the maximum for a knowing violation from $1,000 in section 834 to $10,000 in section 1809 and the grant to the Secretary of Transportation of the authority to levy such civil penalty administratively after notice and opportunity to be heard signify an intent inconsistent with the arguments in the dissent in *International Minerals, supra.*

Further evidence is furnished under section 113 of P.L. 93–633 which contained the conforming amendments to various statutes —i.e., 46 U.S.C. § 170, 49 U.S.C. §§ 1471,

1472 and 1655. Prior to P.L. 93–633, 49 U.S.C. § 1472(h) had provided for a criminal penalty of one year's imprisonment and/or a $1,000 fine for knowingly transporting an explosive or other dangerous article by airplane in violation of a regulation. By section 113, the criminal penalty was limited to a willful violation and increased to five years' imprisonment and/or a $25,000 fine. If the other statutes had been similarly treated, the Magistrate's holding would be supported. Such is not the case.

■ Prior to P.L. 93–633, 46 U.S.C. § 170(14), (15) and (16) encompassed the penalties facing a violator of section 170 or of any of the regulations established under that section by the Commandant of the Coast Guard covering transportation by vessels of explosives or other dangerous materials. Subsections 170(14) and (15) contained criminal penalties for knowing violations under section 170. Neither subsection (14) nor subsection (15) was amended to alter the respective crime's nature and subsection (17) was added to make a *knowing* violation of section 170 or of a regulation punishable by a civil penalty of a fine of up to $10,000 for each violation. Thus the amendments to 46 U.S.C. § 170 produce the same interrelating result as the penalties under sections 834 and 1809(a)(1)—namely, a knowing violation is punishable by both a criminal and civil penalty.

The existence of both a civil and criminal penalty in 46 U.S.C. § 170 for the same violation is not due to an oversight. By section 204 of the "Rail Safety Improvement Act of 1974" (Title II of P.L. 93–633), Congress explicitly amended 45 U.S.C. §§ 39 and 438 to provide the alternative of a civil or a criminal penalty for a failure by a railroad to file an accident report as required by 45 U.S.C. § 38. Prior to the enactment of P.L. 93–633, a failure to file an accident report was subject solely to a criminal fine of $100. By section 204, a civil penalty of a fine of not less than $250 and not more than $2,500 was added.

Additionally, section 113 includes an indirect reference to 18 U.S.C. §§ 831–835 which points to an intent not to repeal.

Subsections 113(e)(1) and (2), in amending 49 U.S.C. § 1655(f)(3)(A) and § 1655 (f)(3)(B), struck out the period at the end of each and inserted in lieu thereof "(other than subsection (e)(4) [49 U.S.C. § 1655(e)(4)])." so that they now read:

"(3)(A) The Federal Railroad Administrator shall carry out the functions, powers, and duties of the Secretary pertaining to railroad safety as set forth in the statutes transferred to the Secretary by subsection (e) of this section (other than subsection (e)(4) of this section).

"(B) The Federal Highway Administrator shall carry out the functions, powers, and duties of the Secretary pertaining to motor carrier safety as set forth in the statutes transferred to the Secretary by subsection (e) of this section (other than subsection (e)(4) of this section)."

Subsection (e)(4) reads:

"There are hereby transferred to and vested in the Secretary all functions, powers, and duties of the Interstate Commerce Commission and of the Chairman, members, officers, and offices thereof, under—

\* \* \* \* \* \*

"the following provisions of law relating generally to explosives and other dangerous articles: Sections 831–835 of Title 18."

■ It is a cardinal principle of statutory construction that repeals by implication are not favored. *United States v. United Continental Tuna Corp.*, 425 U.S. 164, 168, 96 S.Ct. 1319, 47 L.Ed.2d 653 (1976). There are, however,

"\* \* \* two well-settled categories of repeals by implication—(1) where provisions in the two acts are in irreconcilable conflict, the later act to the extent of the conflict constitutes an implied repeal of the earlier one· and (2) if the later act covers the whole subject of the earlier one and is clearly intended as a substitute, it will operate similarly as a repeal of the earlier act. But, in either case, the intention of the legislature to repeal must be clear and manifest; otherwise, at least as a general thing, the later act is to be construed as a continuation of, and not a substitute for, the first act and will continue to speak, so far as the two acts are the same, from the time of the first enactment." *Posadas v. National City Bank*, 296 U.S. 497, 503, 56 S.Ct. 349, 352, 80 L.Ed. 351 (1936). (Underscoring added.)

As I have noted above, Congress did not manifest an intention to repeal sections 831–834 or, particularly, subsection 834(f). Further, I find that 49 U.S.C. § 1809(a) and 18 U.S.C. § 834(f) are not in irreconcilable conflict and that the penalty under 49 U.S.C. § 1809(a) and (b) was not clearly intended to substitute for the penalty under 18 U.S.C. § 834(f).

■ Although the Government has offered two explanations as to how both sections could be construed together, the facts of this case do not require a decision on this point. The regulation allegedly violated by Allied was issued under the authority of 18 U.S.C. §§ 831–835 and 18 U.S.C. § 834(f) is the section under which the Information is being prosecuted. The same result would occur if it is held either that section 834(f) is the sole provision applicable because the regulation involved was not promulgated under sections 1804 and 1809 or that either section 834(f) or section 1809 applies. It is within the Government's discretion to elect the applicable forbiddance under which to prosecute. The more restrictive construction and the one emphasized by the Government in its response to my questions would be the former. My reading of sections 1809(a)(1) and (b) (110(a)(1) and (b) of P.L. 93–633) demonstrates to me that an ambiguity exists which permits the possibility of both constructions. The first sentences in those sections make a person who knowingly or willfully (respectively) "violat[es] a provision of this chapter [Title 40, Chap. 27, §§ 1801–1812] or of a regulation issued under this chapter [underscoring added]" subject (respectively) to a civil or criminal penalty. The second sentence of section 1809(a)(1), in defining the civil penalty, speaks of "a violation of any regulation". While the more prudent course would be

the more restrictive construction, the choice is not before me for decision.

 Allied's contention that section 834(f) applies only to violations of ICC regulations and not to those promulgated by DOT after 49 U.S.C. § 1655(e)(4) effected a transfer of functions under 18 U.S.C. § 834(f) is without merit. Regulations 49 CFR 173.1(b) and 49 CFR 173.22(a), allegedly violated, were both promulgated by ICC prior to the transfer of certain functions, powers and duties to DOT on April 1, 1967. From that date to August 11, 1976, 49 CFR 173.1(b) was neither revised, amended nor corrected; 49 CFR 173.22(a) was revised October 4, 1968 (33 FR 14921) and corrected on December 27, 1968 (33 FR 19823). Further, section 1655(e) contains more than a "simple reference to the 1966 establishment of the Department of Transportation". The transfer of powers included the power to promulgate new regulations and to enforce old regulations under 18 U.S.C. §§ 831–835. The absence of any amendment of section 834 to indicate the transfer does not affect this conclusion.

The Government's contention that the terms "knowingly" and "willfully" were intended by Congress to have the same meaning cannot pass without comment. No rule of statutory construction supports the contention that "[s]ince there is no explanation given for the insertion of the term 'willfully' in the criminal penalty provision by the conference committee, we may assume that no actual change in meaning was intended." (Government's Brief in Response to Questions Posed by Judge, received Apr. 4, 1977, p. 6). The context in which the word "willfully" is used does not tolerate such interpretation. Senate Conference Report No. 93–1347, in explaining the conference substitutions in the penalties section of Title I, noted not only the change of "willfully" for "knowingly" in the imposition of the criminal penalties but also, in referring to the civil penalties, noted that "knowingly" did not require a showing that a defendant have known that the act constituted a violation. In such context the change from "knowingly" to "willfully" im-

plies that Congress intended that the level of "mens rea" required before the criminal penalty under section 1809(b) can be imposed is greater than that for a civil penalty under section 1809(a)(1). Therefore in applying the standard of intent under section 1809(b), it may be necessary to show a voluntary, intentional violation of a *known* legal duty. *Cf., United States v. Bishop,* 412 U.S. 346, 360, 93 S.Ct. 2008, 36 L.Ed.2d 941 (1973) (meaning of willfulness in 26 U.S.C. § 7206).

It hereby is

ORDERED that Allied Chemical Corporation's motion to dismiss the information is denied.