## In re Sandy's Hotel

*Robert I. Boose II,* for petitioners.
*Walter A. Criste,* for respondent.

SHAULIS, *P.J.,* July 22, 1986 — This matter comes before the court on an appeal from the deci-

sion of the Pennsylvania Liquor Control Board imposing a fine against the petitioners, Alexander H. Ross and JoAnna LaRue Ross, trading as Sandy's Hotel.

## FACTS

The petitioners are owners and operators of Sandy's Hotel, a hotel licensed for the sale of alcoholic beverages located in Paint Township, Somerset County. Instantly, the petitioners are appealing a decision by the Pennsylvania Liquor Control Board that found them guilty of permitting a minor to frequent premises licensed for the sale of alcoholic beverages, and for serving a minor alcoholic beverages. The minor who was served used an altered identification card to obtain the alcohol. Although several of the other facts of this case are somewhat in dispute, we affirm the factual determination made by the PLCB. That leaves us to address a somewhat sophisticated argument of a highly legal nature raised by the petitioners; an argument based upon the well rooted notion of equitable estoppel.

## DISCUSSION

The petitioners' argument arises out of section 495 of the Liquor Code, 47 Pa.C.S. §4-495, which sets forth identification card requirements relating to proof of age. The petitioners refer specifically in their argument to subsections (c) and (e) of the statute which state:

"(c) In addition to the presentation of such identification card, the agent of the State Liquor Store or the licensee or his servant, agent or employe, shall require the person whose age may be in question to fill in and sign a card in the following form:

_____ , 19\_\_\_\_

I, _____ , hereby represent to _____ , a State Store or licensee of the Pennsylvania Liquor Control Board, that I am of full age and discretion and over the age of 21 years, having been born on _____ , 19\_\_\_\_, at _____ . This statement is made to induce said store or licensee above named to sell or otherwise furnish alcoholic beverages to the undersigned.

Serial Number of Identification Card:

I understand that I am subject to a fine of $300.00 and sixty days imprisonment for any misrepresentation herein.

_____

(Name)

_____

(Address)

Witness:

Name_____

Address _____

"Such statement shall be printed upon a 3-by-5 inch or 4-by-4 inch file card, which card shall be filed alphabetically by the State Liquor Store or licensee, at or before the close of business on the day of which said certificate is executed, in a file box containing a suitable alphabetical index, and which card shall be subject to examination by any officer, agent or employe of the Liquor Control Board at any and all times.

. . .

"(e) The signed statement in the possession of a licensee or an employe of a State Liquor Store may be offered as a defense in all civil and criminal pros-

ecutions for serving a minor, and no penalty shall be imposed if the Liquor Control Board or the courts are satisfied that the licensee or State Liquor Store employe acted in good faith."

In short, subsection (e) provides a defense that is available to tavern owners when the owner acts in good faith, yet serves an underaged individual. Subsection (e) normally becomes relevant when an underaged patron alters or falsifies the age description on an otherwise legal identification card. If the tavern owner serves such an individual, subsection (e), which requires that the tavern owner obtain a signed affidavit from the underaged individual stating that he is 21 years of age or older, provides the tavern owner with a valid defense.

The Pennsylvania courts have consistently held that: "The only defense to violation of section 4-493 of this title [the Liquor Code], making it unlawful for licensee to sell, furnish or give any liquor or malt or brewed beverages to a minor, is compliance with this section requiring presentation of Liquor Control Board identification card and signing of another card." *Appeal of Charsuner Bar Corp.*, 68 Pa. Commw. 382, 449 A.2d 106 (1982). Here, it is clear that the petitioners served a minor. It is also clear, and admitted by the petitioners, that they obtained no signed affidavit from the minor. Therefore, the petitioners have no defense under section 4-495 of the Liquor Code.

Left with no statutory defense, the petitioners have turned to equitable doctrines in their appeal to this court. The petitioners argue that they had no knowledge of section 4-495, and its affidavit requirements. They argue that about 50 percent of the tavern keepers in this county have no knowledge of the affidavit requirement. Further they assert that the negligence of the PLCB in its printed

matters has given them reason not to suspect the existence of such a law. The PLCB has, they argue, sent out a letter detailing what identification cards comply with current statutory standards, but making no mention of the affidavit requirement. In addition, the board has issued a pamphlet summarizing the law applicable to liquor license holders. However, the pamphlet, while listing the acceptable age makes no mention of the affidavit requirement. These acts by the PLCB, argue the petitioners, induced them to rely upon the board's printed notifications as if they were the law. Therefore, the petitioners argue that the board is now estopped from holding the petitioners liable for the unprinted affidavit requirement.

While we find the petitioners' argument to have a degree of attractiveness on the surface, a close look at the law as it stands, and the policies behind it, causes us to affirm the board's decision. We begin with one of the oldest maxims and most accepted cornerstones of British and American common law, ignorantia juris neminem excusat, ignorance of the law is no excuse. The maxim has been universally recognized by the highest courts and most profound legal scholars. The United States Supreme Court has said that: "The principle that ignorance of the law is no defense applies whether the law be a statute or a duly promulgated and published regulation." *United States v. International Minerals and Chemical Corp.*, 402 U.S. 558, 563 (1971). The Pennsylvania Supreme Court has echoed an affirmation of the early common law doctrine in *Commonwealth v. Jackson*, 345 Pa. 456, 28 A.2d 894 (1942). Additionally, the Pennsylvania Legislature has adopted 18 Pa.C.S. §304, which allows ignorance as a defense only if it negates a required spe-

cific intent, or when the law provides specifically that ignorance is a defense.

Ignorantia juris neminem excusat is not, however, a doctrine so rigid that it is without exceptions. The exception most nearly applicable to the instant case is stated concisely by the Model Penal Code, and has been recognized by the Eastern District Court of Pennsylvania. The district court states:

"The Model Penal Code provides for this defense as follows:

"(3) A belief that conduct does not legally constitute an offense is a defense to a prosecution for that offense based upon such conduct when:

. . .

'(b) he [the actor] acts in reasonable reliance upon an official statement of the law, afterward determined to be invalid or erroneous, contained in (i) a statute or other enactment; (ii) a judicial decision, opinion or judgment; (iii) an administrative order or grant of permission; or an official interpretation of the officer or body charged by law with responsibility for the interpretation, administration or enforcement of the law defining the offense.' Model Penal Code, §2.04." *Kratz v. Kratz*, 477 F.Supp. 463, 480 (E.D. Pa., 1979). This exception, to a large extent, resembles the estoppel argument presented by the petitioners instantly. Elements of reliance and claims of ignorance are both accounted for in the code's exception.

We believe that the instant case does not fall under the potential exception, even if the Pennsylvania state courts were to adopt it. For example, this is not a case such as *Cox v. Louisiana*, 31 L.Ed.2d 487 (1965) where a civil rights leader's conviction for picketing across the street from the courthouse, where police had told him it was lawful to demonstrate, was reversed. Nor is this a case such as *Raley*

*v. Ohio*, 3 L.Ed 2d 1344 (1959), where four witnesses were called before the Ohio Un-American Activities Commission and informed by the chairman that they had a constitutional right against self-incrimination. When the four asserted that privilege and were convicted for contempt, the United States Supreme Court unanimously reversed their convictions because it "would be to sanction the most indefensible sort of entrapment by the state — convicting a citizen for exercising a privilege which the state clearly had told him was available to him. . . . A state may not issue commands to its citizens, under criminal sanctions, in language so vague and undefined as to afford no fair warning of what conduct might transgress them. . . . Inexplicably contradictory commands in statutes ordaining criminal penalties have, in the same fashion, judicially been denied the force of criminal sanctions. . . . Here there were more than commands simply vague or even contradictory. There was active misleading. . . ." *Kratz* at 481.

It is this sort of reliance upon "active misleading" by government officials that the language of the Model Penal Code and the United States Supreme Court have allowed as an exception to the ignorance of the law doctrine.

In this case, the state agency's misleading of the petitioner was, if misleading at all, a passive and not an active misleading. This court recognizes, and gives weight to the fact that, the PLCB issued a pamphlet as a guide to liquor license holders that never mentioned the affidavit requirement of section 4-495(c). We also give some equitable acknowledgment to the petitioner's argument that a requirement such as the affidavit requirement appears to merit inclusion in such a pamphlet. But we note that the pamphlet does not purport to be a compre-

hensive restatement of the Liquor Code.[1] There-
fore, we must disagree with the petitioners, in that
the rule they ask us to adopt, is one that would place
a duty on state agencies to explain, in their pam-
phlets, every legislative enactment and administra-
tive regulation, else those ignorant of an enactment,
that was not explained, would escape liability. Such
a rule would undermine legislative intent, in that
any law not explained in pamphlets, would not have
to be followed, and in reality have little or no effect.
In addition, the petitioners' proposed rule would
contravene notions of economic efficiency, encour-
age ignorance of the law, and create an inequity for
those citizens who diligently seek to know and abide
by the laws of this commonwealth.

The most esteemed legal scholars throughout his-
tory have left us with innumerable essays exploring,
examining, and explaining the many justifications
underlying ignorantia juris neminem excusat. In
closing this opinion, two such essays in particular
seem to merit attention. Holmes in his seminal trea-
tise The Common Law wrote:

"The true explanation of the rule is the same as
that which accounts for the law's indifference to a
man's particular temperament, faculties, and so

---

1. The PLCB pamphlet states:

"The information contained in this booklet has been pre-
pared for the purpose of providing the licensee or prospective
licensee with a general description of the requirements for the
operation of a licensed business. It is not intended as a substi-
tute for the official Acts of the Pennsylvania Legislature relat-
ing to the manufacture of and transactions in liquor, alcohol
and malt or brewed beverages or the regulations promulgated
by the Board. Therefore, specific information on the interpre-
tation of any point of law or the regulations should be obtained
directly from the office of the Board in Harrisburg." Informa-
tion Booklet for Retail and Wholesale Licenses, p.IV, (1982).

forth. Public policy sacrifices that individual to the general good. It is desirable that the burden of all should be equal, but it is still more desirable to put an end to robbery and murder. It is no doubt true that there are many cases in which the criminal could not have known that he was breaking the law, but to admit the excuse at all would be to encourage ignorance where the lawmaker has determined to make men know and obey, and justice to the individual is rightly outweighed by the larger interests on the side of the scale." O. Holmes, The Common Law 47-48 (1881)

Finally, Austin in his Lectures on Jurisprudence stated in 1869:

"The only sufficient reason for the rule in question, seems to be this: that if ignorance of law were admitted as a ground of exemption, the courts would be involved in questions which it were scarcely possible to solve, and which would render the administration of justice next to impracticable. If ignorance of law were admitted as a ground of exemption, ignorance of law would always be alleged by the party, and the court, in every case, would be bound to decide the point." 1 J. Austin, Lectures on Jurisprudence, 498-99 (3d Ed., 1869)

We must, therefore, in light of well settled principles, with acknowledgement to some recently created exceptions to those principles, deny the petitioner's request for relief.

## ORDER

Now, this July 22, 1986, after full hearing, the appeal is dismissed at the cost of the appellants; and order of the Pennsylvania Liquor Control Board is affirmed.