**UNITED STATES of America, Plaintiff,**

v.

**ECONOMY MUFFLER & TIRE CENTER, INC., Defendant.**

Civ. A. No. 3:90CV00644.

United States District Court,
E.D. Virginia,
Richmond Division.

April 30, 1991.

Robert William Jaspen, Debra Jean Prillaman, Asst. U.S. Attys., Richmond, Va., Richard B. Stewart, J. Jared Snyder, U.S. Dept. of Justice, Environmental and Natural Resources Div., Angela E. Fitzgerald, U.S. E.P.A., Washington, D.C., for plaintiff.

Michael John Farley, Donald David Anderson, McGuire, Woods, Battle & Boothe, Richmond, Va., for defendant.

## MEMORANDUM OPINION

RICHARD L. WILLIAMS, District Judge.

This matter is before the Court on the defendant's motion for summary judgment, pursuant to Fed.R.Civ.Proc. 56(b), and the government's motion for partial summary judgment, pursuant to Fed.R.Civ.Proc. 56(a). For the reasons stated below, the defendant's motion is DENIED and the government's motion is GRANTED.

## FACTUAL AND PROCEDURAL HISTORY

Defendant Economy Muffler and Tire Center, Inc. ("Economy Muffler") owns and operates an automobile repair shop in Richmond, Virginia which routinely services motor vehicle exhaust systems. On thirty-two occasions during the past five years, Economy Muffler service personnel re-placed three-way catalytic converters with two-way catalytic converters on a total of fifty-one motor vehicles. Four of the vehicles in which Economy Muffler employees installed two-way catalytic converters were still subject to a manufacturer's five year/fifty-thousand mile warranty on emission control systems.

Two-way catalytic converters contain platinum and palladium, chemical substances which reduce the emissions of carbon monoxide and hydrocarbons. Three-way catalytic converters also contain rhodium, a chemical substance which reduces the emissions of nitrogen oxides. Since the early 1980s, most passenger cars sold in the United States have been equipped with three-way converters, in accordance with Environmental Protection Agency ("EPA") emission control standards.

Economy Muffler representatives regularly received and signed certificates, also known as "statement forms", labeled "Notice[s] to Professional Installers". The statement forms contained the following excerpt from the Section 203(a)(3)(B) enforcement policy published by the EPA at 51 Fed.Reg. 28118 on August 5, 1986:

In order not to be considered a violation of Section 203(a)(3) of the Clean Air Act, the converter must:

\* \* \* \* \* \*

3. Be the same type of converter as the original (i.e. oxidation, three-way, or three-way plus oxidation).

4. Be the proper converter for the vehicle application as determined and specified by the Catalog.

On December 3, 1990, the United States brought a civil action against Economy Muffler charging violations of Section 203(a)(3)(B) of the Clean Air Act and seeking penalties of up to $2,500.00 for each violation. This Court has jurisdiction over the matter pursuant to Section 205 of the Clean Air Act, 42 U.S.C. Section 7524, and 28 U.S.C. Sections 1345 and 1355.

## ARGUMENT

Section 203(a)(3)(B) of the Clean Air Act, known as "the tampering provision",

prohibits "any person engaged in the business of repairing [or] servicing ... motor vehicles" from "knowingly ... remov[ing] or render[ing] inoperative any device or element of design installed on or in a motor vehicle ... in compliance with regulations under this title ..." 42 U.S.C. § 7522(a)(3)(B). In *United States v. Haney Chevrolet, Inc.*, 371 F.Supp. 381 (1974), a Florida District Court held that a service manager violated § 203(a)(3)(B) by removing an automobile's original carburetor and accompanying idle speed solenoid and installing a new carburetor without the idle speed solenoid. The Court reasoned that the transmission control spark system and the idle speed solenoid are emission control devices or elements of design within the meaning of the statute. By replacing the original carburetor with a different carburetor that lacked the idle speed solenoid, the solenoid was rendered inoperative. The same reasoning is applicable here. Three-way catalytic converters contain rhodium, a "device" or "element of design" without which a motor vehicle's exhaust system can not reduce emissions of nitrogen oxide. Replacing a three-way converter with a two-way converter effectively removes rhodium or renders it inoperative and is therefore subject to civil penalties under the Clean Air Act.

The legislative history of the Act suggests that Congress intended the statute to be interpreted in this manner. The Senate Report explains that the provision does not prohibit the use of aftermarket parts "except where the use of such parts or the service performed would adversely affect the emission control system of the vehicle." S.Rep. No. 95–127, 95th Cong., 1st Sess. 79 (1977). Similarly, the House Committee on Interstate and Foreign Commerce Report states that Congress enacted the tampering provision "to assure that vehicle emission control systems will function as intended during the time the vehicle is in use." H.R.Rep. No. 95–294, 95th Cong., 1st Sess. 297 (1977), reprinted in 1977 U.S.Code Cong. & Ad. News 1077, 1376. Installing a two-way converter in place of a three-way converter adversely affects a vehicle's emission control system by destroying its capacity to prevent the harmful emission of nitrogen oxides.

The EPA has consistently interpreted the statute to bar the replacement of three-way catalytic converters with two-way catalytic converters. The tampering enforcement policy published by the EPA on August 6, 1986 and reproduced on statement forms distributed to repair shops specifically requires that a replacement converter "[b]e the same type of converter as the original". 51 Fed.Reg. 28118 (August 5, 1986). As the agency responsible for Clean Air Act enforcement, the EPA's interpretation of the statute is entitled to "considerable deference." *Union Electric Co. v. EPA*, 427 U.S. 246, 256, 96 S.Ct. 2518, 2525, 49 L.Ed.2d 474 (1976); *Train v. Natural Resources Defense Council*, 421 U.S. 60, 75, 95 S.Ct. 1470, 1479, 43 L.Ed.2d 731 (1975); *Lead Industries Association v. EPA*, 647 F.2d 1130, 1147 (D.C.Cir.), *cert. den.* 449 U.S. 1042, 101 S.Ct. 621, 66 L.Ed.2d 503 (1980).

■ Defendant argues that the tampering policy imposes a new set of legal obligations not contained in the statute and, for this reason, should have been enacted or promulgated as regulations in accordance with the Administrative Procedure Act's notice and comment rulemaking requirements. 5 U.S.C. Section 553. The defendant's characterization of the EPA enforcement policy is inaccurate. The tampering enforcement policy falls under Administrative Procedure Act Section 553(b)(3)(A), which exempts interpretive rules, general statements of policy and rules of agency organization, procedure and practice from the APA's rulemaking requirements. District Judge MacKenzie noted in *Tabb Lake, Ltd. v. United States*, 715 F.Supp. 726, 728 (E.D.Va.1988), *aff'd*, 885 F.2d 866 (4th Cir.1989), that "the distinction between a substantive and interpretive rule is a gray area." However, the Court is satisfied, upon reviewing the legislative history of the Act, that the EPA policy clarifies Congress' desires with respect to emission control systems rather than "add[s] substantive content of its own." *Id.* at 728, quoting *American Hos-*

*pital Association v. Bowen,* 640 F.Supp. 453 (D.D.C.1986), *rev'd* 834 F.2d 1037, 1045 (D.C.Cir.1987). Compare *Jerri's Ceramic Arts v. Consumer Product Safety* 874 F.2d 205 (4th Cir.1989) (Consumer Product Safety Commission's elimination of former exemption from the Federal Hazardous Substances Act's "Small Parts Rule", combined with provision of enforcement powers, has force of law and is therefore not exempt from APA's rulemaking requirements).

■ Economy Muffler also claims that its employees did not knowingly violate the Clean Air Act because they were not aware of the Act's requirements with respect to converters. In adopting the 1977 amendments to the Clean Air Act, the House Committee on Interstate and Foreign Commerce endorsed the construction of the term "knowingly" given by the Federal District Court in *United States v. Haney Chevrolet, Inc.* H.R.Rep., *supra,* at 298, 1977 U.S. Code Cong. & Admin. News 1377. The Court in *Haney* accepted the well-settled view that "an act is done knowingly when it is done voluntarily or intentionally, and not by mistake. *Haney,* 371 F.Supp. at 384–5. The Court stated further:

> the prohibited act 'of removal or rendering inoperative a device or element of design' is complete within the meaning of this statute when the dealer knowingly removes or renders inoperative the emission control devices or elements of design on a particular vehicle and voluntarily relinquishes custody and control … with the emission control devices or elements of design removed or rendered inoperative. *Id.* at 384–5.

The term "knowingly" modifies the verbs "remove" and "render" and applies not to the law but to the offensive act. Both the United States Supreme Court and the Fourth Circuit Court of Appeals have established that the inclusion of the term 'knowingly' in an environmental statute does not "carv[e] out an exception to the general rule that ignorance of the law is no excuse." *United States v. International Minerals & Chemical Corp.,* 402 U.S. 558,

563, 91 S.Ct. 1697, 1700, 29 L.Ed.2d 178 (1971); *United States v. Jones,* 735 F.2d 785, 790 (4th Cir.), *cert. den.* 469 U.S. 918, 105 S.Ct. 297, 83 L.Ed.2d 232 (1984). Lack of intent to violate the law may be considered in mitigation of a civil penalty but assessment of such a penalty does not require a showing of willfulness or negligence. *United States v. Mac's Muffler Shop,* 25 E.R.C. 1369, 1986 WL 15443 (N.D. Ga.1986), citing *United States v. Swingline, Inc.,* 371 F.Supp. 37, 45 (E.D.N.Y. 1974) and *United States v. Velsicol Chemical Corp.,* 12 E.R.C. 1417, 1421 (W.D.Tenn. 1978).

■ Finally, Economy Muffler challenges the statute as void for vagueness. In reviewing a business regulation for vagueness, "the principal inquiry is whether the law affords fair warning of what is proscribed." *Village of Hoffman Estates, et al. v. The Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 503, 102 S.Ct. 1186, 1195, 71 L.Ed.2d 362 (1982). Fair warning is interpreted more loosely in the context of economic regulation because "businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action." *Id.* at 498, 102 S.Ct. at 1193. In Economy Muffler's case, independent inquiry was unnecessary because the law governing converter replacement was publicized on widely distributed statement forms which required company endorsement and in trade journals. The company president's claim that he and other employees were unaware of the legal requirements even though they received and signed dozens of statement forms bearing the text of the enforcement policy strains credibility. For these reasons, the defendant's motion for summary judgment is DENIED and the government's motion for partial summary judgment is GRANTED.

It is so ORDERED.