# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 04-3083

GARRY IOFFE,

*Plaintiff-Appellant*,

v.

SKOKIE MOTOR SALES, INC., **doing
business as** SHERMAN DODGE,

*Defendant-Appellee.*

———————

Appeal from the United States District Court for
the Northern District of Illinois, Eastern Division.
No. 03 C 6892—**George W. Lindberg**, *Judge.*

———————

ARGUED APRIL 15, 2005—DECIDED JULY 7, 2005

———————

Before FLAUM, *Chief Judge*, and BAUER and EVANS,
*Circuit Judges*.

FLAUM, *Chief Judge*. Plaintiff-appellant Garry Ioffe filed
suit regarding a used car he purchased from defendant-
appellee Skokie Motor Sales, Inc., doing business as
Sherman Dodge, a car dealership. Although Ioffe alleges a
violation of 49 C.F.R. § 580.5(c), a regulation promulgated
under the federal Odometer Act, 49 U.S.C. § 32701 *et seq.*,
his claim is wholly unrelated to the vehicle's odometer or
mileage. For the reasons stated herein, we agree with the

district court that an Odometer Act claim that is brought by a private party and is based on a violation of § 580.5(c) requires proof that the vehicle's transferor intended to defraud a transferee with respect to mileage. Accordingly, we affirm the entry of summary judgment in favor of Sherman Dodge.

## I. Background

On September 12, 2001, Sherman Dodge purchased a 1993 Toyota Tercel, giving its customer a trade-in allowance of only $500 for the car because its certificate of title stated that it had been "rebuilt." On October 1, 2001, Sherman Dodge sold the same Toyota Tercel to Garry Ioffe for $2,637.11, but did not tell him that the car had been rebuilt or show him the car's title. At the time of sale, Sherman Dodge gave Ioffe an odometer disclosure statement which said that, to the best of Sherman Dodge's knowledge, the Tercel's odometer reading of 90,258 was accurate. Although Sherman Dodge did not give it to Ioffe at the time, the title listed the same mileage. Ioffe does not dispute the accuracy of the disclosed mileage.

Shortly after the purchase, Ioffe started having mechanical problems with the Tercel. He consulted a mechanic and learned for the first time that the car had been rebuilt. When Sherman Dodge refused to remedy the situation to his liking, Ioffe traded in the car at another dealership, receiving $500 for it.

On September 30, 2003, Ioffe filed suit against Sherman Dodge in federal court, alleging two claims under Illinois law and one claim under the federal Odometer Act. Following cross-motions for summary judgment, the district court granted Sherman Dodge's motion for summary judgment on the Odometer Act claim, denied Ioffe's motion on that claim, and declined to exercise supplemental jurisdiction over Ioffe's state-law claims. In ruling on the federal claim, the

court stated that the Odometer Act requires a private plaintiff to prove (1) a violation of the Act or a related regulation, and (2) that the violation was committed with intent to defraud. The evidence viewed in the light most favorable to Ioffe showed that Sherman Dodge had failed to disclose the mileage in writing on the title in violation of 49 C.F.R. § 580.5(c), and that its intent in withholding the title was fraudulent. Nevertheless, the district court held that the Odometer Act claim failed as a matter of law because Sherman Dodge intended to defraud Ioffe with regard to the car's rebuilt status and not its mileage.

Ioffe appeals, arguing that the district court misinterpreted the statute and regulation, and that the "intent to defraud" element of an Odometer Act claim based on a violation of 49 C.F.R. § 580.5(c) may be satisfied by demonstrating fraudulent intent unrelated to a vehicle's mileage.

## II. Discussion

Summary judgment is appropriate if the evidence presented by the parties "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We review the district court's grant of summary judgment de novo, viewing all facts and drawing all reasonable inferences in the non-moving party's favor. *Eisencorp, Inc. v. Rocky Mountain Radar, Inc.*, 398 F.3d 962, 965 (7th Cir. 2005).

The question before the Court—whether the Odometer Act creates a private right of action based on a violation of 49 C.F.R. § 580.5(c) where the transferor's fraudulent intent is unrelated to a vehicle's odometer or mileage— comes to us as a matter of first impression. Neither the United States Supreme Court nor any of the federal courts of appeals have addressed it. We begin our inquiry into the proper interpretation of the statute and regulation by deter-

mining "whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Id.* at 341. "Our inquiry must cease if the statutory language is unambiguous and 'the statutory scheme is coherent and consistent.'" *Id.* at 340 (quoting *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 240 (1989)).

The Odometer Act requires the written disclosure of a vehicle's mileage upon transfer and authorizes the Secretary of Transportation to prescribe procedures for doing so:

> Under regulations prescribed by the Secretary of Transportation that include the way in which information is disclosed and retained under this section, a person transferring ownership of a motor vehicle shall give the transferee the following written disclosure:
>
> > (A) Disclosure of the cumulative mileage registered on the odometer.
> >
> > (B) Disclosure that the actual mileage is unknown, if the transferor knows that the odometer reading is different from the number of miles the vehicle has actually traveled.

49 U.S.C. § 32705(a)(1). Based upon this delegation of authority, the National Highway Traffic Safety Administration ("NHTSA")[1] promulgated the following regulation: "In connection with the transfer of ownership of a motor vehicle,

---

[1] NHTSA is part of the Department of Transportation and its administrator reports directly to the Secretary of Transportation. *See* 49 C.F.R. § 1.3(b)(4).

each transferor shall disclose the mileage to the transferee in writing on the title or . . . on the document being used to reassign the title." 49 C.F.R. § 580.5(c). Finally, the section of the Odometer Act which creates a private right of action provides in relevant part:

> **(a) Violation and amount of damages.**—A person that violates this chapter or a regulation prescribed or order issued under this chapter, with intent to defraud, is liable for 3 times the actual damages or $1,500, whichever is greater.

> **(b) Civil actions.**—A person may bring a civil action to enforce a claim under this section in an appropriate United States district court or in another court of competent jurisdiction.

49 U.S.C. § 32710.

Based on these provisions, Ioffe presents the following syllogism: a plaintiff has a private right of action under § 32710 if there has been a violation of the Odometer Act or any of its implementing regulations and the violator intended to defraud the plaintiff; Sherman Dodge violated 49 C.F.R. § 580.5(c), promulgated pursuant to 49 U.S.C. § 32705(a)(1), by disclosing the Tercel's mileage on a document other than its title, and Sherman Dodge intended to defraud Ioffe by hiding the title's "rebuilt" designation; therefore, Ioffe has a claim against Sherman Dodge under the Act. Upon consideration of the language of the statute and the regulation, the specific context in which that language is used, and the broader context of the statute and its implementing regulations, *see Robinson*, 519 U.S. at 341, we conclude that Ioffe's first premise misstates the law. Section 32710 does not create a private right of action for all violations of the Act and regulations that are accompanied by any "intent to defraud." Rather, where a plaintiff alleges a violation of 49 C.F.R. § 580.5(c), he must prove intent to defraud as to a vehicle's mileage. With a correct statement of the law, Ioffe's syllogism, and his claim, fall apart.

The provision of the Odometer Act that provides a private right of action states: "A person that violates this chapter or a regulation prescribed . . . under this chapter, with intent to defraud, is liable." 49 U.S.C. § 32710(a). The verb "to violate" and its object "this chapter or a regulation" state the prohibited conduct, while the adverbial phrase "with intent to defraud" modifies the prohibited conduct and defines the way in which it must be committed for a private claim to arise. Ioffe first tries to get to his desired interpretation by separating these two aspects of the provision. He contends that we first should ask if there was any violation, and then if there was any contemporaneous intend to defraud. This is not a proper way to read the statute.

When analyzing a prohibited act, we must construe general statements of prohibited conduct (such as "[violation of] this chapter or a regulation") as "shorthand designation[s] for specific acts or omissions which violate the Act [or a regulation]." *United States v. Int'l Minerals & Chem. Corp.*, 402 U.S. 558, 562 (1971). Because intent requirements modify specific alleged violations, we must replace any shorthand designation for prohibited conduct with a specific violation before interpreting the intent element. *Cf. Int'l Minerals*, 402 U.S. at 561-62. Here, Ioffe alleges a violation of 49 C.F.R. § 580.5(c), which provides in relevant part that each transferor of a motor vehicle "shall disclose the mileage to the transferee in writing on the title." Replacing § 32710(a)'s shorthand designation with the specific conduct prohibited by § 580.5(c), we find that the Act creates the following private right of action: "A person that [does not disclose the mileage to the transferee in writing on the title], with intent to defraud, is liable."

Word choice and sentence structure help clarify how the "intent to defraud" element operates in this context. The use of "with" in "with intent to defraud" indicates a link between the violative conduct and the intent requirement. The conduct and the fraudulent intent are not two inde-

pendent elements such that any contemporaneous fraud will do. Rather, there is a prohibited act—not disclosing the mileage to the transferee in writing on the title—which is modified by the adverbial phrase "with intent to defraud." Thus, the private right of action covers prohibited acts that are committed with fraudulent intent and excludes cases where some fraudulent act happens to coincide with a violation of a regulation but the violative act is done for reasons other than to perpetrate a fraud.

Next, Ioffe essentially argues that even if the "intent to defraud" element must be read in connection with the specific violation, the intent requirement does not necessarily apply to the prohibited conduct as a whole. He divides the prohibited act into two parts—"does not disclose the mileage to the transferee" and "in writing on the title"—and argues that § 32710 is satisfied if there is fraudulent intent as to either the transferor's decision not to disclose the mileage or its decision not to provide the title. There is no logical or grammatical reason for this division. The more natural reading is to understand the prohibited conduct as a whole—does not disclose the mileage to the transferee in writing on the title—and to require that the intent to defraud apply to the violation in its entirety. This reading suggests that there must be fraudulent intent as to the decision not to disclose the mileage on the title, not merely as to the decision to withhold the certificate of title for reasons unrelated to the mileage disclosure.

The specific context in which the statutory language appears also supports this reading. Section 32705, the source of NHTSA's authority to promulgate 49 C.F.R. § 580.5(c), requires only that a transferor of a motor vehicle provide written disclosure of "the cumulative mileage registered on the odometer." 49 U.S.C. § 32705(a)(1). In granting authority to issue implementing regulations, Congress directed the Secretary of Transportation to prescribe "the way in which

[the cumulative mileage] information is disclosed and retained." *Id.* We have understood this language as "limiting the NHTSA's regulatory authority to the promulgation of mere procedural or logistical rules." *Diersen v. Chi. Car Exch.*, 110 F.3d 481, 485-86 (7th Cir. 1997).

In *Diersen*, a purchaser of a used car brought suit against a dealership, alleging violation of the disclosure requirements of the Odometer Act. The district court granted the dealership's motion for summary judgment based on a regulation which purported to exempt cars ten years old or older from the disclosure requirements of the Act. *Id.* at 484. In reviewing the decision, we observed that the regulation "effectively remove[d] a cause of action that Congress has unambiguously provided to *all* victims of odometer fraud," and we held that to do so was beyond NHTSA's delegated authority to promulgate "mere procedural or logistical rules." *Id.* at 486-87 (emphasis in original).

In enacting the Odometer Act, Congress created a private right to sue a transferor for failure to disclose "the cumulative mileage registered on the odometer," "with intent to defraud." *See* 49 U.S.C. §§ 32705(a)(1)(A); 32710(a). In other words, it created a private claim for odometer or mileage fraud. If Ioffe is correct about the interaction between § 32710 and 49 C.F.R. § 580.5(c), NHTSA substantively and dramatically changed the law by creating a broad new right of action for all fraud that involves the withholding of a certificate of title. The regulation would do much more than prescribe "the way in which [the cumulative mileage] information is disclosed and retained" by dramatically increasing the number and types of private claims available under the Act and expanding the private right of action far beyond its scope under the statute. There is no indication that Congress intended to authorize NHTSA to effect such a dramatic change in the law or that NHTSA intended to do so.

Finally, looking to the broader context of the statute and its implementing regulations, we see that a requirement that a transferor's fraudulent intent relate to the vehicle's mileage comports with the expressed purposes of the Act and regulations. The only stated purposes of the Act are "(1) to prohibit tampering with motor vehicle odometers; and (2) to provide safeguards to protect purchasers in the sale of motor vehicles with altered or reset odometers." 49 U.S.C. § 32701(b). Section 580.5(c) appears in Part 580 of Title 49 of the Code of Federal Regulations, entitled "Odometer Disclosure Requirements," which has the following stated "scope": "This part prescribes rules requiring transferors . . . of motor vehicles to make written disclosure to transferees . . . concerning the odometer mileage and its accuracy as directed by sections [32705(a) and (c)]." 49 C.F.R. § 580.1. The stated purpose of Part 580, in relevant part, is "to provide purchasers of motor vehicles with odometer information to assist them in determining a vehicle's condition and value by making the disclosure of a vehicle's mileage a condition of title." 49 C.F.R. § 580.2. These statements of purpose and scope indicate that the legislation is concerned specifically with fraud related to a vehicle's mileage rather than with all types of fraud that might involve the withholding of a vehicle's title.

The language and context of the Odometer Act and its implementing regulations support the conclusion that the Act's private right of action based on violations of 49 C.F.R. § 580.5(c) extends only to cases where the transferor intended to defraud a transferee about the vehicle's mileage. Although our inquiry need go no further, *see Robinson*, 519 U.S. at 340, we briefly address Ioffe's additional arguments in favor of a different interpretation of the statute.

First, Ioffe asserts that the Truth in Mileage Act of 1986, which amended 49 U.S.C. §§ 32702, 32705, and 32709, supports his interpretation because it expressly required that the Odometer Act's mandatory disclosures be made

on the certificate of title. *See* Pub. L. No. 99-579 (Oct. 28, 1986). In fact, these amendments undermine Ioffe's position. The amendments to § 32702 merely define the terms "auction company," "leased motor vehicle," and "title." *See* 49 U.S.C. §§ 32702(1), (4), (7); Pub. L. No. 99-579, § 2. The amendments to § 32705, governing the "Disclosure Requirements on Transfer of Motor Vehicles," set forth the conditions for licensure by a state of a transferred motor vehicle and create additional information disclosure and retention requirements for leased and auctioned cars. *See* §§ 32705(b)(1), (b)(3), (c), (d), and (e); Pub. L. No. 99-579, § 2. Although these amendments elevate the importance of the certificate of title in the mileage disclosure process, they do not purport to alter the scope of the private right of action created by § 32710. Instead, through its amendments to § 32709, Congress enhanced the civil and criminal penalties that may be imposed by the federal government, but did not amend the section governing private claims. *See* §§ 32709(a)-(b); Pub. L. No. 99-579, § 3.

These amendments highlight the important distinction between private and public actions which Ioffe ignores. The Odometer Act creates a comprehensive enforcement scheme of which private civil liability is only one part. Public actions may lead to injunctions, civil monetary penalties, and criminal fines and imprisonment. *See* 49 U.S.C. § 32709. While the private right of action based on violations of 49 C.F.R. § 580.5(c) is limited to cases involving fraudulent intent with regard to a vehicle's mileage, other sanctions or remedies may be available for violations of § 580.5(c) that do not involve this type of intent. To promote consistent compliance and to effectuate the purposes of the Act, federal and state governments may strictly enforce the regulations governing the "way in which [the cumulative mileage] information is disclosed and retained," regardless of the violator's intent. *See* 49 U.S.C. § 32705(a)(1). It does not necessarily follow, as Ioffe suggests, that there must

also be a private claim for all violations of these procedural regulations. To the contrary, Congress expressly limited the private right of action to the subset of violations that are committed with fraudulent intent.

Next, Ioffe argues that the Tercel's "status as rebuilt provides a direct nexus with its odometer reading." Ioffe describes how rebuilders must face choices in disclosing a vehicle's mileage when parts from different vehicles with different odometer readings are used in the reconstruction. In this case, however, Ioffe does not contend that the mileage disclosed by Sherman Dodge was inaccurate or misleading. Rather, he suggests that transferors that conceal the rebuilt status of cars often do so to defraud transferees as to mileage, and that this can be prevented by recognizing a private right of action for all claims based on this type of fraud. This is essentially the same as Ioffe's final argument that effective prevention of odometer fraud will be furthered by creation of a private right of action for all fraudulent failures to provide the title for inspection before sale. Whether or not this is true, there is no indication in the Act that Congress intended to federalize this multitude of vehicle sales fraud claims that are unrelated to mileage. We may not consider the benefits of what Ioffe believes would be a more effective preventative scheme than the one chosen by Congress.

### III. Conclusion

The Odometer Act creates a private right of action for violations of 49 C.F.R. § 580.5(c) only where a transferor chose not to disclose a vehicle's mileage to the transferee in writing on the title with intent to defraud as to the vehicle's mileage. We are not persuaded by Ioffe's arguments that the right extends to situations, as in this case, where the transferor intended to, and did, accurately disclose the

vehicle's mileage. Accordingly, we AFFIRM the district court's grant of summary judgment in favor of Sherman Dodge.

A true Copy:

   Teste:

_____
***Clerk of the United States Court of***
***Appeals for the Seventh Circuit***