[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 04-15337

_____

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 23, 2005
THOMAS K. KAHN
CLERK

D. C. Docket No. 04-21588-CV-DLG

GLENDALE OWENS,

Plaintiff-Appellant,

versus

SAMKLE AUTOMOTIVE INCORPORATED,
d.b.a. Marlin Mazda,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(September 23, 2005)

Before BARKETT and MARCUS, Circuit Judges, and GEORGE[*], District Judge.

PER CURIAM:

_____

[*] Honorable Lloyd D. George, United States District Judge for the District of Nevada, sitting by designation.

Glendale Owens appeals the dismissal of her amended complaint alleging that Samkle Automotive violated the federal Vehicle Information and Cost Savings Act (the "Odometer Act" or the "Act"), 49 U.S.C. § 32701 et seq.[1] Title 49, section 32710(a) of the United States Code permits a private party to recover treble damages or $1,500, whichever is greater, from "[a] person who violates [the Odometer Act] or a regulation prescribed or order issued under [the Odometer Act], with intent to defraud[.]" 49 U.S.C. § 32710(a) (2000). The parties do not dispute that Owens properly alleged that Samkle violated the Odometer Act, and that it did so with the intent to defraud her. However, Owens did not allege that Samkle intended to defraud her specifically with respect to the vehicle's mileage, a fact the district court found fatal to her Odometer Act claim. The district court held that "recovery under the Odometer Act is permissible only when a plaintiff can allege and prove intent to defraud with the respect to a vehicle's mileage."

Owens argues that the plain language of § 32710(a) contains no such

[1] Owens' amended complaint included various related state-law claims, over which the district court had supplemental jurisdiction, by virtue of its original jurisdiction over her Odometer Act claim. See 28 U.S.C. § 1367(a) (2000). When the district court dismissed the federal claim, it declined to continue exercising supplemental jurisdiction over Owens' state-law claims, and dismissed them as well. See 28 U.S.C. § 1367(c)(3) (2000) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if … the district court has dismissed all claims over which it has original jurisdiction … ."); Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988) ("When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice.").

restriction, and an allegation of intent to defraud in connection with an Odometer Act violation sufficiently states a claim under that subsection. We agree, and accordingly REVERSE and REMAND this case to the district court for further proceedings.

## I. BACKGROUND[2]

Owens' amended complaint alleges the following facts. Samkle operates a car dealership in Miami, Florida, known as "Marlin Mazda," from which Owens sought to purchase a used car. Salespersons at the dealership showed her a 2002 Mazda 626, and told her that the vehicle was in "excellent" condition. Based on this representation, Owens bought the car.

At the time of sale, the dealership required Owens to sign a battery of forms — a power of attorney, an odometer disclosure statement, a motor vehicle reassignment supplement, and an application for certificate of title (collectively, the "Transfer Forms") — but not the car's original title, as required by the Odometer Act. See 49 U.S.C. § 32705(a) (2000); 49 C.F.R. § 580.5 (2000). The Transfer Forms were not the official, secured forms issued by the State of Florida as required by the Odometer Act, see 49 C.F.R. § 580.4 (2000), and did not contain certain mandatory disclosures. See id. § 580.5. By having Owens sign the

_____

[2] For the purposes of this appeal, we only relate the factual allegations relevant to Owens' Odometer Act claim.

3

Transfer Forms, Marlin Mazda transferred ownership of the car to Owens without ever showing her the car's original title.

Owens alleges that the dealership used the Transfer Forms, and not the original title, to transfer ownership of the car, because it sought to conceal what the title would have revealed — that the car was previously a short-term rental vehicle owned by Hertz. She alleges that she would not have bought the car at $25,858.00 had she known it had been a Hertz rental vehicle.

## II. DISCUSSION

We review a district court's grant of a motion to dismiss de novo, taking as true the facts as they are alleged in the complaint. Sosa v. Chase Manhattan Mortgage Corp., 348 F.3d 979, 983 (11th Cir. 2003).

The Odometer Act allows private parties to recover money damages from those that violate its provisions with the intent to defraud: "A person that violates this chapter or a regulation prescribed or order issued under this chapter, with intent to defraud, is liable for 3 times the actual damages or $1,500, whichever is greater." 49 U.S.C. § 32710(a) (2005). There is no dispute that Owens has properly alleged violations of the Odometer Act. The complaint alleges that Marlin Mazda, with the intent to defraud Owens, violated a "regulation prescribed...under" the Odometer Act. Specifically, Owens alleged the violation of

4

49 C.F.R. § 580.5(c), which provides that "[i]n connection with the transfer of ownership of a motor vehicle, each transferor shall disclose the mileage to the transferee in writing <u>on the title</u> ... ." (emphasis added). The Act defines "title" as "the certificate of title or other document issued by the State indicating ownership." 49 U.S.C. § 32702(7). Thus, the complaint alleged all of the necessary elements required for a private cause of action pursuant to this statute: (1) that the defendant violated the Act or its regulations, (2) with intent to defraud.

Samkle argues that although it may have acted "with intent to defraud" Ms. Owens when it concealed the title from her, the complaint still fails to state a cause of action because the fraud referenced in the statute can only relate to the vehicle's mileage. However, to accept this argument would violate the first canon of statutory construction, which requires that courts give effect to the plain and unambiguous language of a statute. "As in any case of statutory construction, our analysis begins with the 'language of the statute.' And where the statutory language provides a clear answer, it ends there as well." <u>Hughes Aircraft Co. v. Jacobson</u>, 525 U.S. 432, 438, (1999) (quoting <u>Estate of Cowart v. Nicklos Drilling Co.</u>, 505 US 469, 475, (1992)). In other words, courts must "presume that Congress said what it meant and meant what it said." <u>Harry v. Marchant</u>, 291 F.3d 767, 770 (11th Cir. 2002).

5

On its face, this statute's meaning is direct, clear and unambiguous. No language limits the meaning of the clause "with intent to defraud." Absent any such limitation, the statute's meaning is clear — if you violate the Odometer Act, and you do so with the intent to defraud your victim in any respect relating to the Odometer Act or the regulations passed pursuant to it, you are liable. Thus, the statute's plain language does not admit to the district court's limiting construction, which reads words into the statute that do not exist. United States v. Fisher, 289 F.3d 1329, 1338 (11th Cir. 2002) ("If the statute's meaning is plain and unambiguous, there is no need for further inquiry. The plain language is presumed to express congressional intent and will control a court's interpretation.").[3] To augment the statutory language with an additional element, never mentioned by Congress, that the fraud must be "with respect to the vehicle's mileage" violates the cardinal rule of statutory construction. [4]

---

[3] See also, e.g., Maxwell v. Moore, 63 U.S. 185, 191 (1859) ("[W]here the Legislature makes a plain provision, without making any exception, the courts of justice can make none, as it would be legislating to do so.").

[4] For this reason, we disagree with the court in Ioffe v Skokie Motor Sales, 414 F.3d 708 (7th Cir. 2005) ("[A]n Odometer Act claim that is brought by a private party and is based on a violation of § 580.5(c) requires proof that the vehicle's transferor intended to defraud a transferee with respect to mileage."). We believe the Seventh Circuit failed to apply the statute's plain language, which unambiguously requires that a transferor of a motor vehicle disclose the actual mileage to the transferee on the title.

Nor do we agree with Ioffe's construction of the "intent to defraud" language of § 32710(a) as a "shorthand designation for specific acts or omissions which violate [the regulation]." Id. (citing United States v. Int'l Minerals & Chem. Corp., 402 U.S. 558 (1971)). In Int'l Minerals, the

6

We do note, however, that a plain-language reading is also consistent with the general principle that the Odometer Act is remedial legislation that should be "broadly construed to effectuate its purpose," Ryan v. Edwards, 592 F.2d 756, 760 (4th Cir. 1979) (construing the predecessor to § 32710(a)), and a plain reading is not inconsistent with the Act's stated purposes.[5] Title 49, section 32701 of the United States Code ("Findings and purposes") indicates that the Odometer Act, as its title suggests, is aimed at preventing odometer tampering and odometer fraud:

a) Findings. Congress finds that--
(1) buyers of motor vehicles rely heavily on the odometer reading as an index of the condition and value of a vehicle;
(2) buyers are entitled to rely on the odometer reading as an accurate indication of the mileage of the vehicle;
(3) an accurate indication of the mileage assists a buyer in deciding on the safety and reliability of the vehicle; and
(4) motor vehicles move in, or affect, interstate and foreign commerce.

(b) Purposes. The purposes of this chapter are--
(1) to prohibit tampering with motor vehicle odometers; and

---

Supreme Court held that, in order to preserve the rule that ignorance of the law is no excuse, a statute punishing the "knowing" violation of the regulation in question (covering description of transported hazardous material) must be construed to apply not to knowledge of the regulation but to knowledge of facts which violated the statute or regulation. Under § 32710(a), however, "intent to defraud" does not fall within the same "narrow zone" in which the "mens rea" issue was raised in Int'l Minerals. See id. At 560. In this case, "intent to defraud" is not an elemetn of the prohibited conduct, but an independent requirement for a private claim arising out of the violation.

[5] See Norfolk Redevelopment & Hous. Auth. v. Chesapeake & Potomac Tel. Co., 464 U.S. 30, 36 (1983) ("As in all cases of statutory construction, our task is to interpret the words of the statute in light of the purposes Congress sought to serve.") (internal marks and citations omitted).

> (2) to provide safeguards to protect purchasers in the sale of motor vehicles with altered or reset odometers.

49 U.S.C. § 32701 (2000).

Consistent with these purposes and findings, Congress established a remedial scheme that not only punished violators, but deterred would-be violators through a complex regulatory system that made even sophisticated odometer fraud difficult to attempt unnoticed. The regulations include, as one would expect, a flat prohibition on odometer tampering. 49 U.S.C. § 32703 (2000). However, Congress also mandated standardized disclosure requirements and record-keeping procedures formulated to provide consumers with transparent information about a vehicle's background, to ease investigation and prosecution of violators, and to prevent would-be violators from taking advantage of titling and registration loopholes to perpetrate odometer fraud. See, e.g., 49 U.S.C. § 32705 (2000) (setting forth disclosure requirements for transferring ownership of a motor vehicle); 49 C.F.R. § 580.1 et seq. (2004) (specifying, among other things, the content of odometer information disclosures and record keeping procedures, and requiring titles and power of attorney forms to be printed using a secure printing process); see also 49 U.S.C. § 32706 (2000) (conferring investigatory authority and the power to require car dealers or distributors to keep records of motor vehicle sales available for inspection by the Secretary of Transportation).

8

In particular, the disclosure and title regulations that Samkle allegedly violated aim in part to thwart "title laundering," a practice unscrupulous sellers employ to falsify the mileage listed on a car's title to conform with an altered odometer reading:

> Title laundering is a scheme commonly used by dealers involved in odometer fraud. The main purpose of title laundering is to get a low mileage title from a State motor vehicle titling office in exchange for a high mileage title. The most basic form of title laundering is to simply alter the high odometer reading on the title to a low odometer reading and apply for and receive a title containing the lower reading. A more sophisticated scheme involves sending the high mileage title to a State not requiring odometer readings on title documents and obtaining a new title which does not contain an odometer reading.

Odometer Disclosure Requirements, 52 Fed. Reg. 27022, 27023 (proposed July 17, 1987) (later codified with modifications at 49 C.F.R. § 580.1 et seq. (2004)).

Requiring mileage disclosures to be made on a securely printed title proved critical to fighting title laundering. Prior to the 1988 revisions establishing the present-day regulations, see Odometer Disclosure Requirements, 53 Fed. Reg. 29464 (Aug. 5, 1988) (codified at 49 C.F.R. § 580.1 et seq. (2004)), federal law required mileage disclosure only on a "federal odometer statement." Odometer Disclosure Requirements, 52 Fed. Reg. at 27023. A piece of paper separate from the title, the odometer statement could be easily altered or discarded and did not travel with the title. Id. Consequently, it did not warn subsequent purchasers

9

about the vehicle's mileage and ownership history, and did little to curb title laundering. Id. at 27022-23. On the other hand, when the title itself must contain the mileage disclosure and be shown to the buyer, a seller will find it difficult to conceal the vehicle's history and true mileage. Id. Also, to require the mileage disclosure directly on the title establishes a "paper trail" for consumers and law enforcement to deter potential violators and help apprehend sellers that break the law. Id. Similarly, the rule that requires sellers to print titles and power of attorney forms using a secure process, and states to issue power of attorney forms by the state, see 49 C.F.R. § 580.4 (2004), makes alteration or forgery of titles more difficult and creates an official paper record tracing the vehicle's ownership.

In other words, the regulations at issue in this case are the "safeguards" designed "to protect purchasers in the sale of motor vehicles with altered or reset odometers" that are contemplated by the Act's purposes. See 49 U.S.C. § 32701(b)(2) (2000). They prevent unscrupulous dealers from using their own procedures to mislead a purchaser about a vehicle's mileage — not only with respect to the actual number of miles driven, but where those miles were driven and by whom. See 49 C.F.R. § 580.2 (2004) ("The purpose of this part is to provide purchasers of motor vehicles with odometer information to assist them in determining a vehicle's condition and value . . . ."); Yazzie v. Amigo Chevrolet,

10

Inc., 189 F. Supp. 2d 1245, 1248-49 (D.N.M. 2001) (holding that allegations of specific intent to defraud with respect to the vehicle's mileage are not required to bring suit under § 32710(a) when a dealer manipulated title procedures in violation of the Odometer Act to hide the identity of the vehicle's prior owner).[6] The identity of former owners, of critical import to the consumer, is also critical to law enforcement, who rely on the chain of title to ascertain the true ownership and mileage of a vehicle. See Odometer Disclosure Requirements, 53 Fed. Reg. at 29468-69 ("Congress noted that '[o]ne of the major barriers to decreasing odometer fraud is the lack of evidence or "paper trail" showing incidence of rollbacks[.]' … Under [the title disclosure requirements], the integrity of the paper trail has been maintained since the disclosure will be on the title and consumers will be able to see the disclosures and examine the titles for alterations, erasures, or other marks. Furthermore, consumers will learn the names of previous owners that appear on the title.") (quoting H.R. Rep. No. 99-833, at 18 (1986) (committee report for the Truth in Mileage Act of 1986, Pub. L. No. 99-579, 100 Stat. 3309 (1986), which modified the original federal odometer laws in the Motor Vehicle Information and Cost Savings Act of 1972, Pub. L. No. 92-513, §§ 401-13, 86 Stat.

---

[6] Indeed, a "significant part" of odometer fraud involves rental vehicles like the one Owens allegedly purchased. H.R. Rep. No. 99-833, at 18 (1986) ("[The National Highway Traffic Safety Administration] said a 'significant part of [odometer] fraud involves vehicles which have been used by lease companies or in business fleets.'").

947, 961-63)).[7]

Thus, the success of the complex remedial scheme Congress has created depends on compliance with a multitude of interdependent and seemingly "technical" provisions, such as those Samkle allegedly violated. Violations of these "technical" regulations can defeat the entire remedial scheme — even if they are not committed with the intent to defraud with respect to the vehicle's mileage — by creating gaps in the vehicle's "paper trail" that: (1) thwart investigation of future violations; and (2) make it difficult for future purchasers of a vehicle to spot odometer fraud by preventing them from accurately assessing the vehicle's ownership history.

Moreover, the language of § 32710(a) reflects Congressional intent to use civil suits by private individuals to enforce compliance with even the most "technical" provisions of the Odometer Act. To be sure, violators are subject to both civil and criminal penalties for "technical" violations even if they commit them without intent to defraud, see 49 U.S.C. § 32709(a)-(b), as well as to suits for injunctive relief by the United States and the fifty States. Id. §§ 32709(c),

_____

[7] Accordingly, the Secretary of Transportation rejected suggestions that a dealer be allowed to substitute a "special power of attorney" form on secure paper for the title in all cases. Odometer Disclosure Requirements, 53 Fed. Reg. at 29468-69. This procedure, the Secretary stated, "would not allow transferees to see the actual title document, including the disclosures, and could easily be discarded. A forged substitute could then be submitted to the titling office" in order to retitle the car with the false odometer reading. Id. at 29469.

12

(d)(1)(A). But, as the former Fifth Circuit recognized, "unless a violation of the [Odometer] Act can lead to [private] civil liability, the Act is toothless." Nieto v. Pence, 578 F.2d 640, 643 (5th Cir. 1978); see also H.R. Rep. No. 99-833, at 18 (1986) (justifying making odometer fraud a felony because "[t]he Department of Transportation (DOT) believes that evidence indicates that current criminal penalties for odometer tampering are not a sufficient deterrent. According to DOT, many prosecutors are reluctant to prosecute misdemeanor offenses and place very low priority on odometer cases because they are misdemeanors."). Although a violator faces potential punishment from the government, "such relief, although theoretically available, is unlikely. Private prosecution is needed to make the Act effective." Nieto, 578 F.2d at 643. Accordingly, Congress provided a private civil remedy to punish violators of the Odometer Act, so that it would be "largely self-enforcing." H.R. Rep. No. 92-1033, at 20 (1972) (committee report for the Motor Vehicle Information and Cost Savings Act of 1972, precursor to the present-day Odometer Act).

Therefore, to limit private civil suits under § 32710(a) only to instances where the defendant intended to defraud the victim with respect to the vehicle's mileage runs counter to the purposes of the private civil remedy — to compensate victims for harm suffered, and to ensure strict compliance with the Odometer Act's

13

provisions. Both purposes are also reflected in the text of § 32710(a). The violator must make the victim whole, but also must pay an additional price — either double the actual damages or up to $1,500 — as a penalty for violating the Act. 49 U.S.C. § 32710(a) (2000). It would therefore be inimical to the private civil remedy's function as the Act's primary enforcement mechanism to limit its reach to instances where the defendant intended to defraud his victim "with respect to the vehicle's mileage." Such a reading neither comports with the statute's plain language, nor accords with its remedial purpose.

Consequently, the district court erred when it required Owens to "allege and prove intent to defraud with respect to a vehicle's mileage." Owens has alleged violations of the Odometer Act committed with the intent to defraud, and that is enough to state a claim under § 32710(a).

**REVERSED** and **REMANDED**.