**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MAYBLE C. BODINE,
          *Plaintiff-Appellant,*

v.

GRACO, INC.; DAN MARSHALL; JANE
DOE MARSHALL,
          *Defendants-Appellees.*

No. 06-16271

D.C. No.
CV-05-00434-BPV

OPINION

Appeal from the United States District Court
for the District of Arizona
Bernardo P. Velasco, Magistrate Judge, Presiding

Argued and Submitted
March 6, 2008—Arizona State University
Tempe, Arizona

Filed July 24, 2008

Before: Michael Daly Hawkins, Sidney R. Thomas, and
Richard R. Clifton, Circuit Judges.

Opinion by Judge Hawkins

## COUNSEL

Richard J. Rubin (briefed and presented oral argument), Santa Fe, New Mexico, and Veronika Fabian (appeared at oral argument), Tempe, Arizona, for the plaintiff-appellant.

John J. Kastner (briefed) and Rebecca Parker-Perry (presented oral argument), Kimble, Nelson, Audilett & Kastner, Tucson, Arizona, for the defendants-appellees.

**OPINION**

HAWKINS, Circuit Judge:

Does the Motor Vehicle Information and Cost Savings Act ("the Odometer Act" or "the Act"), 49 U.S.C. §§ 32701-32711, and its implementing regulations, 49 C.F.R. pt. 580, allow a private right of action where the fraud relates to something other than the vehicle's mileage—in this case, its accident history?

Two of our sister circuits have split on this issue. *Owens v. Samkle Auto. Inc.*, 425 F.3d 1318, 1320 (11th Cir. 2005) (per curiam) (holding that "an allegation of intent to defraud in connection with an Odometer Act violation sufficiently states a claim," even when the intent to defraud does not relate to mileage); *Ioffe v. Skokie Motor Sales, Inc.*, 414 F.3d 708, 709 (7th Cir. 2005) ("[A]n Odometer Act claim that is brought by a private party and is based on a violation of [the implementing regulations] requires proof that the vehicle's transferor intended to defraud a transferee with respect to mileage."), *cert. denied*, 546 U.S. 1214 (2006).

Finding the reasoning in *Ioffe* persuasive, we conclude that the private right of action under the Odometer Act is limited to allegations of fraud relating to a vehicle's mileage.

## FACTUAL BACKGROUND AND PROCEDURAL STATUS

Mayble C. Bodine ("Bodine"), an elderly grandmother in the market for a truck for her grandson, purchased a used 2001 Dodge pick-up for $19,716.80 from Graco, Inc., and its owners ("Graco"). In the course of closing the transaction, Graco provided Bodine with an accurate odometer (mileage) statement but did not provide a copy of the vehicle's title. Despite Graco's assurances that the vehicle was in good condition, the title would have revealed it was anything but. In

fact, the vehicle's title had been branded "Restored Salvage" in accordance with Arizona law.[1] Bodine claims that Graco deliberately withheld the title in order to conceal that the vehicle had been severely damaged in an earlier collision. Had Graco made the mileage disclosure on the title, Bodine would have examined the title, noticed that it was branded "Restored Salvage," and would not have purchased the truck.

Bodine discovered the truck's branding after she subsequently received a copy of the vehicle registration. She also discovered the truck had mechanical problems rendering it dangerous to drive. Bodine asked Graco to take the truck back. Graco refused and denied any knowledge of its branded status, even though Graco in fact knew about that status when it sold Bodine the truck.

After Bodine filed her complaint in district court, the parties consented to have a magistrate judge hear the matter. Graco then filed a motion to dismiss for lack of jurisdiction under Rule 12(b)(1) of Civil Procedure, and the magistrate judge granted the motion.

Assuming, for the moment, that the court correctly held that a successful Odometer Act claim must include an allegation that the defendant intended to defraud as to mileage, the court nonetheless erred by treating this as a jurisdictional requirement, and not as an ingredient of the claim for relief.

The Supreme Court recently explained that "when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 516 (2006). The intent-to-defraud language is found in 49 U.S.C. § 32710(a), which is captioned "Violation and amount of damages." The jurisdiction-conferring language is found in a neighboring subsection, § 32710(b), which is cap-

---

[1] *See* Ariz. Rev. Stat. Ann. §§ 28-2091, -2095(A).

tioned "Civil actions." Because § 32710(a) "does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts," it was improper to dismiss this case on jurisdictional grounds.[2] *Arbaugh*, 546 U.S. at 515 (internal quotation marks omitted).

Although Graco incorrectly filed a motion to dismiss for lack of jurisdiction, its more general argument regarding the "with intent to defraud" provision is not necessarily flawed. We have the discretion to proceed with this appeal as if the district court granted a Rule 12(b)(6) motion, and we choose to do so here. *See Moore v. United Kingdom*, 384 F.3d 1079, 1090 (9th Cir. 2004); *Capital Tracing, Inc. v. United States*, 63 F.3d 859, 861 n.3 (9th Cir. 1995). We have, therefore, drawn the facts of this case from the well-pleaded allegations of the complaint, which we accept as true. *Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003).

## STANDARD OF REVIEW

We review a Rule 12(b)(6) dismissal de novo. *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 899 (9th Cir. 2007). While we may affirm on any ground supported by the record, *McKesson HBOC, Inc. v. N.Y. State Common Ret. Fund, Inc.*, 339 F.3d 1087, 1090 (9th Cir. 2003), we are to sustain a dismissal only if it is clear from the complaint "that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Synagogue v. United States*, 482 F.3d 1058, 1060 (9th Cir. 2007) (internal quotation marks omitted).

---

[2]Additionally, we note that Bodine's claim is not "immaterial and made solely for the purpose of obtaining jurisdiction," nor is it "wholly insubstantial and frivolous." *Bell v. Hood*, 327 U.S. 678, 682-83 (1946). If it were, the district court's decision to dismiss under Rule 12(b)(1) might have been proper. *See Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733-35 (9th Cir. 1979).

## DISCUSSION

Bodine's theory is that Graco was obligated to provide her with a title containing an accurate description of the vehicle's mileage, and that Graco failed in that obligation when it deliberately withheld the title in an effort to conceal the vehicle's collision history. Recognizing that Bodine's theory is exclusively concerned with the vehicle's title, and is in no way related to the representations about the truck's odometer, we turn to the language of the statute. *See Knight v. Comm'r*, 128 S. Ct. 782, 787 (2008).

## I.   The Odometer Act

The statutory scheme begins with a list of Congress's findings and purposes. 49 U.S.C. § 32701.

> Congress finds that—
>
> (1) buyers of motor vehicles rely heavily on the odometer reading as an index of the condition and value of a vehicle;
>
> (2) buyers are entitled to rely on the odometer reading as an accurate indication of the mileage of the vehicle;
>
> (3) an accurate indication of the mileage assists a buyer in deciding on the safety and reliability of the vehicle; and
>
> (4) motor vehicles move in, or affect, interstate and foreign commerce.

*Id.* § 32701(a). The Odometer Act's purposes are "(1) to prohibit tampering with motor vehicle odometers; and (2) to provide safeguards to protect purchasers in the sale of motor vehicles with altered or reset odometers." *Id.* § 32701(b).

**[1]** Congress effectuated these purposes by outlawing actions that would cause discrepancies between a vehicle's actual mileage and its odometer reading. The Act prohibits odometer[3] tampering with intent "to change the mileage registered by the odometer." *Id.* § 32703(2). It also forbids advertising for sale, selling, using, installing, or having installed "a device that makes an odometer of a motor vehicle register a mileage different from the mileage the vehicle was driven, as registered by the odometer within the designed tolerance of the manufacturer of the odometer." *Id.* § 32703(1). It is also unlawful to, "with intent to defraud, operate a motor vehicle on a street, road, or highway if the person knows that the odometer of the vehicle is disconnected or not operating." *Id.* § 32703(3).

Regulating odometer tampering is Congress's first method of achieving the Act's goals; the second method seeks to empower consumers by providing them with accurate information at the time of a vehicle transfer.[4] By regulation of the

---

[3]"Odometer" is defined as "an instrument for measuring and recording the distance a motor vehicle is driven, but does not include an auxiliary instrument designed to be reset by the operator of the vehicle to record mileage of a trip." 49 U.S.C. § 32702(5).

[4]Section 32705(a) provides, in part:

(1)    Disclosure requirements.—Under regulations prescribed by the Secretary of Transportation that include the way in which information is disclosed and retained under this section, a person transferring ownership of a motor vehicle shall give the transferee the following written disclosure:

(A)    Disclosure of the cumulative mileage registered on the odometer.

(B)    Disclosure that the actual mileage is unknown, if the transferor knows that the odometer reading is different from the number of miles the vehicle has actually traveled.

(2)    A person transferring ownership of a motor vehicle may not violate a regulation prescribed under this section or give a false statement to the transferee in making the disclosure required by such a regulation.

(3)    A person acquiring a motor vehicle for resale may not accept a written disclosure under this section unless it is complete.

National Highway Traffic Safety Administration,[5] "[i]n connection with the transfer of ownership of a motor vehicle, each transferor shall disclose the mileage to the transferee *in writing on the title* . . . ." 49 C.F.R. § 580.5(c) (emphasis added). "Title" is statutorily defined as "the certificate of title or other document issued by the State indicating ownership." 49 U.S.C. § 32702(7); *see also* 49 C.F.R. § 580.3. According to Bodine, Graco "did not make the mileage disclosure on the title as required by 49 C.F.R. § 580.5."

The Odometer Act provides different methods of enforcement. The Secretary of Transportation ("Secretary") can impose a civil penalty of up to $2,000 per violation of the Act or its regulations, and the Attorney General is tasked with enforcing such penalties in a civil action. 49 U.S.C. § 32709(a). The Attorney General or the chief law enforcement officer of a state can bring suit to enjoin violations of the Act and its regulations. *Id.* § 32709(c), (d)(1)(A). The Act provides a criminal penalty applicable to "[a] person that knowingly and willfully violates this chapter or a regulation prescribed . . . under this chapter." *Id.* § 32709(b).

**[2]** In addition to these public means of enforcement, the Act creates a private cause of action. The private cause of action has an independent liability provision: "A person that violates this chapter or a regulation prescribed or order issued under this chapter, *with intent to defraud*, is liable for 3 times the actual damages or $1,500, whichever is greater." 49 U.S.C. § 32710(a) (emphasis added).[6] A private person that

---

[5]The Secretary of Transportation is delegated authority to "prescribe[ ] . . . the way in which information is disclosed and retained" under the Odometer Act, 49 U.S.C. § 32705(a)(1), and the Secretary further delegates that authority to the National Highway Traffic Safety Administrator, 49 C.F.R. § 1.50(f).

[6]The chief law enforcement officer of a state is also empowered to bring an action to recover for a violation of § 32710. 49 U.S.C. § 32709(d)(1)(B).

prevails in a civil action is entitled to attorney's fees and costs. *Id.* § 32710(b).

This last penalty is at issue here. Specifically, we must decide what Congress meant by "with intent to defraud" in § 32710(a).

## II.   *Ioffe* and *Owens*

As noted above, the Seventh and Eleventh Circuits have addressed the meaning of "with intent to defraud" in § 32710(a). *See Owens v. Samkle Auto. Inc.*, 425 F.3d 1318 (11th Cir. 2005) (per curiam); *Ioffe v. Skokie Motor Sales, Inc.*, 414 F.3d 708 (7th Cir. 2005). Although they agree that the plain language of the statute resolves the dispute, they reach directly opposite conclusions.

*Ioffe*, nearly identical to our facts, was the first to tackle the issue. Ioffe purchased a used vehicle that had a certificate of title identifying the vehicle as "rebuilt." At the time of purchase, however, the dealer did not inform Ioffe that the car had been rebuilt or show him the car's title. The dealer had, however, given him an accurate odometer disclosure statement listing the same mileage reading as appeared on the title. While not disputing the accuracy of the mileage statement, Ioffe asserted that the dealer failed to produce the vehicle's title in an effort to defraud him as to the title's "rebuilt" designation, and he brought claim under the Odometer Act and 49 C.F.R. § 580.5(c). 414 F.3d at 709-11.

The Seventh Circuit rejected this theory, concluding that "[t]he Odometer Act creates a private right of action for violations of 49 C.F.R. § 580.5(c) only where a transferor chose not to disclose a vehicle's mileage to the transferee in writing on the title with intent to defraud as to the vehicle's mileage." *Id.* at 715.

Two and a half months after *Ioffe*, the Eleventh Circuit decided *Owens*. Owens, like Ioffe and Bodine, purchased a

used car without seeing its title. She did sign a number of forms—including a Power of Attorney, an odometer disclosure statement, and an application for certificate of title—but because the car's mileage was not disclosed to her on the title, she alleged a violation of 49 C.F.R. § 580.5. Her theory was not, however, that the defendant intended to defraud her with respect to the vehicle's mileage. Rather, she alleged that the dealership-defendant used the transfer forms in lieu of a title "to conceal what the title would have revealed—that the car was previously a short-term rental vehicle owned by Hertz." 425 F.3d at 1320.

The Eleventh Circuit held that "the complaint alleged all of the necessary elements required for a private cause of action pursuant to this statute: (1) that the defendant violated the Act or its regulations, (2) with intent to defraud." *Id.* at 1321. It rejected the argument "that the fraud must be 'with respect to the vehicle's mileage'" because "[n]o language limits the meaning of the clause 'with intent to defraud.'" *Id.*

## III.    Interpreting the Odometer Act

**[3]** The text and purpose of the Odometer Act lead us to believe that the Seventh Circuit has the better of the two positions. To survive a Rule 12(b)(6) motion to dismiss, a plaintiff suing under 49 U.S.C. § 32710 must allege that the defendant violated the Odometer Act with intent to defraud as to mileage.

Bodine's textual argument mirrors the thinking of the *Owens* court: Because "with intent to defraud" is not immediately preceded or followed by any explicit language limiting the provision to odometer fraud, the only natural reading, Bodine argues, is that no such limit exists.

When there is "no statutory definition or definitive clue," a phrase's meaning "has to turn on the language as we normally speak it." *Watson v. United States*, 128 S. Ct. 579, 583

(2007). In ordinary language, "with intent to defraud" is not intrinsically limited, especially not to odometer fraud. When § 32710 is studied in isolation, then, Bodine's reading is not obviously wrong.

It is, however, "our duty to construe statutes, not isolated provisions." *Gustafson v. Alloyd Co.*, 513 U.S. 561, 568 (1995). "[T]he meaning of statutory language, plain or not, depends on context." *Holloway v. United States*, 526 U.S. 1, 7 (1999) (internal quotation marks omitted).

**[4]** With the Odometer Act, we have a "source of a reasonable inference about what Congress understood when writing" § 32710. *Watson*, 128 S. Ct. at 583. Helpfully, Congress made clear its purposes: to prohibit odometer tampering and to protect consumers against the sale of vehicles "with altered or reset odometers." 49 U.S.C. § 32701(b). Every part of the statutory scheme speaks specifically of odometer fraud; there is not a single statutory phrase that suggests Congress wished to reach additional types of fraud. *See id.* § 32703 (targeting physical odometer tampering); *id.* § 32704 (providing specific procedures for repairing and replacing odometers); *id.* § 32705 (requiring disclosure only of transferred vehicle's cumulative mileage).

The effect of all of these express references to odometer fraud is to limit the meaning of "with intent to defraud." *See Gutierrez v. Ada*, 528 U.S. 250, 254-55 (2000) (understanding the statutory phrase "any election" to mean "an election for Governor and Lieutenant Governor" because of numerous other references to Governor and Lieutenant Governor). Even though § 32710(a) does not contain any mention of odometer fraud, it incorporates the conduct-regulating provisions of the Act by referring to "this chapter or a regulation prescribed or order issued under this chapter."

In *Ioffe*, the court usefully replaced this shorthand with the language of 49 C.F.R. § 580.5(c): " 'A person that [does not

disclose the mileage to the transferee in writing on the title], with intent to defraud, is liable.' " 414 F.3d at 712 (alteration in original). Reviewing this language, the court reasoned:

> The use of "with" in "with intent to defraud" indicates a link between the violative conduct and the intent requirement. The conduct and the fraudulent intent are not two independent elements such that any contemporaneous fraud will do. Rather, there is a prohibited act—not disclosing the mileage to the transferee in writing on the title—which is modified by the adverbial phrase "with intent to defraud." Thus, the private right of action covers prohibited acts that are committed with fraudulent intent and excludes cases where some fraudulent act happens to coincide with a violation of a regulation but the violative act is done for reasons other than to perpetrate a fraud.

*Id.*

This reasoning is sound. Although in other statutes "with intent to defraud" might be read capaciously, in § 32710(a) it is limited by the statutorily-defined purposes of the Odometer Act. *See Reves v. Ernst & Young*, 494 U.S. 56, 63 (1990) ("[T]he [statutory] phrase 'any note' should not be interpreted to mean literally 'any note,' but must be understood against the backdrop of what Congress was attempting to accomplish in enacting the Securities Acts."). The substantive provisions of the Act are confined to odometer fraud, even though we can safely assume that Congress does not condone other types of fraud in vehicle transfers. In creating a private right of action, Congress added a further limitation: only violators who act with intent to defraud will be subject to special damages provisions. Bodine offers no cogent reason why Congress would fastidiously restrict the substantive reach of the Act to odometer fraud,[7] while making § 32710(a) liability turn on intent to commit *any* type of fraud.

---

[7]For example, § 32705(a)(2) states: "A person transferring ownership of a motor vehicle may not violate a regulation prescribed under this section

A broader reading of "with intent to defraud" might lead to results inconsistent with the Act's purposes. Because a "term should be construed, if possible, to give it a consistent meaning throughout the [statute]," *Gustafson*, 513 U.S. at 568, the "with intent to defraud" language of § 32710(a) would presumptively control the interpretation of the same language in § 32703(3). As mentioned earlier, that section states that a "person may not . . . with intent to defraud, operate a motor vehicle . . . if the person knows that the odometer of the vehicle is disconnected or not operating." On Bodine's reading, an individual would be liable under the Odometer Act if he fraudulently sold merchandise while happening to drive a vehicle with a broken odometer. Even though "[n]o language limits the meaning of the clause 'with intent to defraud,' " *Owens*, 425 F.3d at 1321, Congress surely did not intend that § 32703(3) be read this way.

**[5]** Bodine argues that a vehicle's restored salvage status provides a "direct nexus" with its odometer reading. Because rebuilders use different parts from different vehicles when restoring a salvaged vehicle, they face choices about how to disclose the rebuilt vehicle's mileage. If a major part is replaced, the rebuilder must decide whether to list the mileage as it read prior to the replacement, or to link it instead to the mileage of the replacement part. These situations allow opportunistic rebuilders to tamper with an odometer reading to the detriment of a future consumer.

---

or give a false statement to the transferee *in making the disclosure required by such a regulation*." (Emphasis added.) Because the only disclosures required by the section pertain to a transferred vehicle's cumulative mileage, the statute only proscribes false statements made about mileage. Had Congress wanted to err on the side of protecting consumers beyond simple odometer fraud, it could have prohibited "a false statement to the transferee with respect to the transferred vehicle." Consistent with the Act's narrow purposes, however, the prohibition is limited to false statements pertaining to mileage disclosures, even though this excludes from federal regulation countless other types of fraud.

If this is correct, then Bodine can satisfy the pleading requirements of the Odometer Act by alleging that Graco withheld the title of the restored salvage truck with the intent to defraud her as to the truck's mileage. If Bodine could prove that the mileage was unlawfully altered in the rebuilding process, and that Graco withheld the title in an effort to conceal this fact, then Bodine would, we assume, have a valid Odometer Act claim. But Bodine has alleged none of this in her complaint, so there is no reason for this court to consider a nexus that might be present in other cases involving restored salvage vehicles. *See Ioffe*, 414 F.3d at 714-15 (rejecting same nexus argument).

**[6]** In support of its holding, the *Owens* court noted that its reading of § 32710(a) was "also consistent with the general principle that the Odometer Act is remedial legislation that should be broadly construed to effectuate its purpose." 425 F.3d at 1322 (internal quotation marks omitted). The court stressed the importance of the title and disclosure requirements, which were intended "to provide consumers with transparent information about a vehicle's background, to ease investigation and prosecution of violators, and to prevent would-be violators from taking advantage of titling and registration loopholes to perpetrate odometer fraud." *Id.* at 1322-23. Reviewing the various requirements of the Act, *Owens* explained that

> the success of the complex remedial scheme Congress has created depends on compliance with a multitude of interdependent and seemingly "technical" provisions . . . . Violations of these "technical" regulations can defeat the entire remedial scheme—even if they are not committed with the intent to defraud with respect to the vehicle's mileage—by creating gaps in the vehicle's "paper trail" that: (1) thwart investigation of future violations; and (2) make it difficult for future purchasers of a vehicle to spot

odometer fraud by preventing them from accurately assessing the vehicle's ownership history.

*Id.* at 1324.

These observations may be accurate, but the analysis proves too much. Emphasizing the importance of the title in no way sheds light on the culpability requirement in § 32710(a). There is no dispute that the title disclosure rule of § 580.5(c) is an important means of combating odometer fraud. As a corollary, it follows that any violation of that section threatens the remedial scheme, whether done with or without an intent to commit any type of fraud. Nonetheless, § 32710(a) only covers violations committed "with intent to defraud." Clearly, Congress did not want vehicle transferors to be liable under § 32710(a) when they acted without the requisite intent, even if their violations threatened the Act's remedial scheme. Therefore, we should not construe § 32710(a) so as to create as much liability as possible. Rather, we must faithfully apply the section's limit on liability, even if it undermines the statute's remedial purposes.

If the statute's design was in fact critically weakened by our interpretation of § 32710(a), there might be reason to think Congress meant "with intent to defraud" in the broadest sense. As *Ioffe* noted, though, the Act "creates a comprehensive enforcement scheme of which private civil liability is only one part." 414 F.3d at 714. Violators are *strictly* liable for civil penalties up to $2,000 per violation, and the Attorney General or a state can seek an injunction for violations committed without any intent. 49 U.S.C. § 32709(a), (c), (d). There are also criminal penalties for "knowingly and willfully" violating the Act or its regulations. *Id.* § 32709(b).

The *Owens* court believed that under-enforcement of the public remedies necessitated a broader reading of the private cause of action. 425 F.3d at 1324-25. Congress was aware of the under-enforcement problem, but it did not respond by

amending the private right of action. Instead, Congress acted on the recommendation of the National Highway Traffic Safety Administration, which suggested that "the most effective way to combat [odometer] fraud is to increase the maximum sentence to three years, converting odometer tampering into a felony. This would make violations much more likely to be prosecuted and would be more threatening to violators." S. Rep. No. 99-47, at 3 (1985). Accordingly, in a 1986 amendment to the Odometer Act, Congress increased the civil and criminal penalties, but did not alter the private right of action. *See* Truth in Mileage Act of 1986, Pub. L. No. 99-579, § 3, 100 Stat. 3309, 3311.[8]

There is a plausible reason why Congress would want to keep the Odometer Act narrow: the availability of state-law remedies. The Act's legislative history explains that states' efforts to regulate odometer tampering were often frustrated because of a lack of interstate uniformity in regulation.[9] The

---

[8]Bodine cites the 1986 amendment, observing that it closed loopholes in the Odometer Act by enhancing the role of the vehicle title. *See* Truth in Mileage Act of 1986, § 2, 100 Stat. at 3309-10. Bodine is correct that "[t]he central purpose of [the amendment] had been to make the title document the sole vehicle for odometer disclosure." Odometer Disclosure Requirements, 56 Fed. Reg. 47681, 46784 (Sept. 20, 1991). But the statutory changes do not support Bodine's reading of "with intent to defraud." "Although these amendments elevate the importance of the certificate of title in the mileage disclosure process, they do not purport to alter the scope of the private right of action created by § 32710." *Ioffe*, 414 F.3d at 714. Instead, as noted above, "Congress enhanced the civil and criminal penalties that may be imposed by the federal government, but did not amend the section governing private claims." *Id.*

[9]*See, e.g.*, S. Rep. No. 99-47, at 1-2 (1985) ("Despite the positive efforts to combat odometer fraud in the majority of States, it remains very easy for a person to mail a certificate of title with high mileage to another person in one of the States not requiring the odometer mileage to be shown on titles and to obtain in return a new title without any odometer information."); S. Rep. No. 92-413 (1971), *as reprinted in* 1972 U.S.C.C.A.N. 3960, 3962 ("Odometers are turned back in States without odometer laws and then cars are marketed at inflated values in States with such laws. Thus, State odometer laws are easily circumvented and people in a State with such a law suffer because of this practice.").

Act addressed this singular problem with specific measures that exclusively target odometer tampering. When the Act was first passed in 1972, Congress was likely aware of other types of fraud in the vehicle market, including collision-history fraud. Presumably, Congress left those areas of fraud unregulated because it believed that state regulation and state-law remedies were adequate. *Cf.* 49 U.S.C. § 32711 (indicating that state law is preempted only if it is "inconsistent" with the Act; otherwise, the Act does not "exempt a person from complying with that law"). It is not this court's role to second guess that judgment, and we cannot expand § 32710(a) to cover other forms of fraud, no matter how pernicious.

At the end of the day, we find the Seventh Circuit's reasoning more consistent with the language and purpose of what is, after all, commonly referred to as the Odometer Act. If Congress had intended the Act to cover a wide range of activities related to the transfer of vehicle titles, it could have easily said so. We do not for a moment condone activities such as those Bodine alleges here. The doors of the Arizona courts are open to pursue her claims.[10] *See, e.g.*, Ariz. Rev. Stat. § 44-1522; *Madisons Chevrolet, Inc. v. Donald*, 505 P.2d 1039, 1041-43 (Ariz. 1973) (holding that defendant car dealer was liable for both fraudulent concealment and fraudulent misrepresentation when it represented that car was "new" when it had actually been in a prior accident, and upholding punitive damages award because defendant's failure "to inform the plaintiff that the automobile had been previously wrecked was a 'reckless indifference' to the rights and safety of" the plaintiff). Our doors are open only as wide as Congress permits and they are open here only wide enough for claims that directly relate to odometer fraud.

**AFFIRMED**.

---

[10]We assume that the statutes of limitations on Bodine's state-law claims are tolled during the pendency of this matter. *See* 28 U.S.C. § 1367(d).